IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY, et al. | : : : | |
| v. | : | Civil Action No. DKC 09-0100 |
| AMERICAN CAPITAL, LTD., et al. | : : : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this insurance case is a motion to dismiss (ECF No. 72) filed by Defendants. The issues are fully briefed and the court now rules, no hearing being deemed necessary. *See* Local Rule 105.6. For the reasons that follow, Defendants' motion will be denied.

**I. Background**

    **A. Principal Allegations**

This case presents an insurance coverage dispute between two insurers and an investment fund. As two opinions in this case have come before this one, some familiarity with the facts is assumed. *See Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, No. 09-0100, 2011 WL 856374 (D.Md. Mar. 9, 2011); *Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, No. 09-0100, 2010 WL 437070 (D.Md. Feb. 2, 2010).

Beginning in 2008, Defendant American Capital, Ltd. and one of its investments, Defendant Scientific Protein Laboratories

LLC ("SPL"), became involved in more than 100 suits pertaining to allegedly defective heparin. These suits, at least according to American Capital, implicated certain primary and umbrella insurance policies ("the Policies") that the company had purchased from Plaintiffs Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America for the years 2006 through 2009. When American Capital sought coverage under the Policies for itself and SPL, Plaintiffs filed this suit for rescission and reformation. Of particular relevance here, the insurers contend that American Capital made a variety of misrepresentations in its insurance applications, including:

- Submitting insurance applications indicating that it had no subsidiaries, even though it now seeks coverage for subsidiaries (*id.* ¶¶ 32, 34);

- Answering "no" on a 2008 insurance application when asked whether it had acquired any operations in the past five years, even though the company acquired SPL in 2006 (*id.* ¶ 37);

- Answering "no" when asked whether there had been any product liability loss in the last three years, even though it had been named as a defendant in at least one heparin lawsuit before submitting its 2008 insurance application (*id.* ¶ 40);

- Answering "no" on its 2008 insurance application when asked whether any products had been recalled, even though heparin and heparin's active pharmaceutical ingredient had been recalled (*id.* ¶ 43);

- Answering "no" in one or more insurance applications when asked whether it sold, distributed, or used foreign

products as components, even though the heparin was processed in China (*id.* ¶ 46);

- Answering "no" on one or more of its insurance applications when asked whether it had been active or was currently active in any joint ventures, even though American Capital admitted in heparin lawsuits that the allegedly tainted heparin was processed by a joint venture (*id.* ¶ 49); and

- Failing to provide details of pending heparin lawsuits in its 2008 application, even though it was asked to give details "of all liability claims exceeding $10,000, or occurrences that might give rise to such claims" (*id.* ¶ 52).

**B. Allegations Concerning Promptness**

In an earlier decision on Defendants' motion to dismiss, the court explained that Plaintiffs had not adequately pled their claim for rescission of the Policies. *See Charter Oak*, 2011 WL 856374, at *13-15. Specifically, Plaintiffs failed to plead facts showing that they acted promptly in seeking rescission. Because "promptness" is an element of a plaintiff's case in any rescission claim, the court dismissed count one of Plaintiffs' first amended complaint. The insurers, however, were granted leave to file a second amended complaint, which they were told should "include facts showing prompt action." *Id.* at *15. Filed on March 29, 2011, the second amended complaint includes 20 additional paragraphs that allege what Plaintiffs knew and when they knew it. (ECF No. 67).

Plaintiffs allege in the second amended complaint that they first learned of a heparin suit filed against American Capital

3

in mid-August 2008, when American Capital forwarded it a notice of a potential claim. (*Id.* ¶ 88). The company did not request defense or indemnity. (*Id.*). The notice further stated that the heparin suit was related to "American Capital's ownership interest" in SPL, but did not "specify the relationship" between American Capital and SPL. (*Id.*). American Capital subsequently sent additional notices "with the same or similar designation." (*Id.*).

Plaintiffs allege that the claim notices led them to request a meeting with American Capital to "obtain additional information regarding the claims, proceed with their investigation, and determine whether American Capital was seeking coverage as to the heparin claims." (*Id.* ¶ 90). Plaintiffs sent American Capital three written requests for meetings in the fall of 2008, while also repeatedly asking whether American Capital was seeking coverage. (*Id.* ¶ 91). American Capital "refused" to meet with the insurers or discuss whether it was in fact seeking coverage for several months. (*Id.* ¶ 92).

According to Plaintiffs, American Capital informed the insurers in October 2008 that it did not wish to discuss coverage issues, as its "defense counsel ha[d] been in discussion with plaintiffs' counsel [in the underlying heparin

4

suits] to effect a no-cost dismissal of [American Capital]." (*Id.* ¶ 93). American Capital felt discussion was unnecessary because "issues of coverage could be mooted" by such a settlement. (*Id.*). Plaintiffs responded by letter on October 23, 2008, insisting that it was still important to meet to discuss the claims and reminding the American Capital that it had not explained whether it was seeking coverage for the heparin suits. (*Id.* ¶¶ 94-95).

The second amended complaint further explains that the insurers and American Capital held a confidential meeting on November 4, 2008. Two days later, American Capital requested "for the first time" that Plaintiffs provide a "coverage position as to [American Capital] and any entity alleged in the pleadings to be a direct or indirect affiliate of American Capital." (*Id.* ¶ 97). Less than a week later, American Capital began submitting notices to the insurers for heparin suits naming SPL - but not American Capital - as a defendant. (*Id.* ¶ 98). The insurers wrote back to American Capital, explaining that it was still their understanding that American Capital was not seeking defense or indemnification for the heparin suits. (*Id.* ¶ 99).[1] The letter also stressed that the insurers

---

[1] That understanding was perhaps tacitly confirmed in late-November 2008, when American Capital provided a chart – at

continued to "reserve all of their rights in this matter," particularly "to the extent that there was inadequate disclosure . . . in the placement or renewal of any of [the Polices]." (*Id.* ¶ 95).

On December 4, 2008, American Capital tendered a "New General Liability Notice of Claim" to the insurers for a non-heparin lawsuit involving American Capital and Defendant Spectator Management Group ("SMG"). (*Id.* ¶ 101). The insurers "learned shortly thereafter" that SMG was one of American Capital's "portfolio companies" and that American Capital intended to tender the suit for coverage. (*Id.*). Later, however, when American Capital was dismissed from the suit, American Capital purportedly informed Plaintiffs that it did not intend to seek coverage under the Policies for SMG. (*Id.*).

On December 29, 2008, American Capital and SPL allegedly provided Plaintiffs with a settlement agreement they had signed with Baxter Healthcare Corporations. (*Id.* ¶ 102). In that agreement, SPL indicated that it "may" have rights under the Policies. (*Id.*). The settlement agreement, along with all of

---

the request of Plaintiffs – that indicated that SPL Holdings LLC, which in turn was owned by SPL Acquisition Corporation, owned SPL. (ECF No. 67 ¶ 100). The chart allegedly did not show any relationship between these entities and American Capital. (*Id.*).

6

the preceding events, allegedly led Plaintiffs to conclude that "American Capital might seek coverage on its own behalf for the heparin suits and for SPL and other portfolio companies under" the Policies. (*Id.* ¶ 103). Thus, Plaintiffs filed this suit on January 16, 2009. (*Id.* ¶ 104). A month later, "for the very first time," American Capital and SPL requested a defense for the heparin suits. (*Id.* ¶ 105).

### C. Motion to Dismiss

On May 13, 2011, Defendants filed a motion to dismiss in part the second amended complaint, arguing that Plaintiffs have still not alleged facts evidencing promptness. (ECF No. 72). Plaintiffs opposed on June 27, 2011. (ECF No. 73). Roughly a month later, Defendants replied. (ECF No. 76).

## II. Standard of Review

As the opinion on Defendants' first motion to dismiss explained, the purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Thus, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *Harrison v. Westinghouse Savannah River Co.*, 176

7

F.3d 776, 783 (4th Cir. 1999). Still, the court need not take everything as true. For instance, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). After considering only the "well-pleaded facts," the court must assess whether those facts "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950 (quotation marks omitted). If they do not, the motion must be granted. *Id.*

**III. Analysis**

Charter Oak and Travelers seek to rescind the Policies based upon American Capital's purported misrepresentations. Because rescission is a radical remedy, courts have long recognized that a party requesting it must move quickly. *See Cutler v. Sugarman Org., Ltd.*, 88 Md.App. 567, 578 (1991) ("[T]he remedy of rescission must be exercised promptly upon discovery of the fraud or misrepresentation. This is so because rescission is considered to be a radical remedy; it therefore must be promptly asserted once a party discovers facts which

8

justify it." (citations and internal marks omitted)); *accord Baumel v. Rosen*, 412 F.2d 571, 574 (4th Cir. 1969) (citations omitted). Courts have deemed the promptness requirement so important that they place the onus on the plaintiff to show it. *See Merritt v. Craig*, 130 Md.App. 350, 365-66 (2000) (quoting *Finch v. Hughes Aircraft Co.*, 57 Md.App. 190, 244 (1984)); *Ellerin v. Fairfax Sav. Ass'n*, 78 Md.App. 92, 109 (1989); *accord Johns Hopkins Univ. v. Hutton*, 488 F.2d 912, 916 n.2 (4th Cir. 1973) ("[I]n the general area of rescission it appears that the requirement of prompt action is an element of the plaintiff's case, and the burden is upon the rescinding party to show that he acted promptly in seeking rescission."); *see also Heidtman Steel Prods. v. Compuware Corp.*, 178 F.Supp.2d 862, 864-65 (N.D.Ohio 2001) (collecting cases).

Given the importance of promptness, the court instructed Plaintiffs that their complaint would need to do more to address that issue if they wished to pursue rescission. The second amended complaint satisfies the court's earlier instruction.

As Plaintiffs correctly recognize, the relevant trigger for rescission is when a plaintiff learns of "the facts that would *justify* rescission," not merely "facts that raise the *mere potentiality* for rescission." *Monumental Life Ins. Co. v. U.S. Fid. & Guar. Co.*, 94 Md.App. 505, 541 (1993) (emphasis in

9

original); *see also Pence v. Langdon*, 99 U.S. 578, 581 (1878) (explaining that a party must ask to rescind when he is "fully advised" of the relevant facts); *Goodman v. Poland*, 395 F.Supp. 660, 676 (D.Md. 1975) (stating that plaintiff was not compelled to act before it had "concrete indication" that it had been defrauded). Furthermore, when an insurer suspects that its policyholder may have made misrepresentations, "it is entitled to a reasonable time within which to investigate the matter" before it must rescind. *N. Am. Specialty Ins. Co. v. Savage*, 977 F.Supp. 725, 732 (D.Md. 1997).

In this case, the second amended complaint alleges that American Capital originally represented that it had no subsidiaries and no liabilities stemming from activities such as those embodied in the heparin suits. In mid-August 2008, Plaintiffs received their first indication that something was amiss, when they were notified of one heparin suit. Despite the fact that the notification was not a formal claim for coverage, the insurers then arguably made diligent attempts to investigate the suits over the next several months. They further reserved their rights with regard to coverage in late-October 2008. The second amended complaint further alleges that American Capital repeatedly engaged in dilatory and obfuscatory tactics, which included providing Plaintiffs with a "chart" showing an

ownership structure for SPL that did not include American Capital. Only in December 2008 did American Capital receive the information that would truly compel it to act: (1) an indication - in the form of a claim notice for SMG - that American Capital believed it had covered subsidiaries; and (2) an indication – in the form of the Baxter settlement agreement – that SPL itself believed it was a subsidiary entitled to coverage. Just a few short weeks later, Plaintiffs filed this suit. The facts alleged render it plausible that Charter Oak and Travelers acted promptly upon their first indication that subsidiaries existed. These facts are in stark contrast to the ordinary case of inadequate promptness, wherein the party "has simply sat back after knowledge of the facts, through indifference, negligence, or a speculative desire to see how things will turn out, and then, after what the court finds to be an unreasonable time, manifests his election to rescind." *Banque Arabe Et Internationale D'Investissement v. Md. Nat'l Bank*, 850 F.Supp. 1199, 1213 (S.D.N.Y. 1994) (quotation marks omitted).

Defendants attempt to make a fine distinction, arguing that the second amended complaint refers only to when Plaintiffs realized American Capital might make a *claim for coverage* based on the putative subsidiaries, not to when Plaintiffs actually

11

recognized that the undisclosed subsidiaries existed. The reasonable inference, however, is that the two events are one and the same. The facts in the second amended complaint indicate that Plaintiffs had no reason to believe that there were any relevant entities related to American Capital until American Capital began raising coverage issues. Plaintiffs investigated, but received no firm answers about the relationship between American Capital and other entities such as SPL. When Plaintiffs learned that American Capital planned to seek coverage under the Policies, that disclosure apparently answered Plaintiffs' previously unresolved question; they were then presented with a "concrete indication" that American Capital had a relationship with SPL that was improperly suppressed. Quite appropriately, Plaintiffs then filed suit.

In addition, Defendants cite (much as they did in their last motion to dismiss) certain extra-complaint evidence that they say would have put Plaintiffs on notice of the existence of subsidiaries much earlier than late 2008. As the court explained before, "[t]his is a motion to dismiss, not a motion for summary judgment. As such, it is not appropriate to wrestle with these types of factual issues at this stage." *Charter Oak*, 2011 WL 856374, at *12. No further comment on such matters is necessary here.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss will be denied. A separate order will follow.

                                                                          /s/
DEBORAH K. CHASANOW
United States District Judge