IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY, et al. | : | |
| v. | : | Civil Action No. DKC 09-0100 |
| AMERICAN CAPITAL, LTD., et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for review in this insurance coverage dispute is the motion filed by Plaintiffs The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America (together, "Travelers" or "Plaintiffs") seeking reconsideration of a limited portion of the court's February 11, 2012 ruling. (ECF No. 172). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiffs' motion will be denied.

I. **Background**

In light of the numerous memorandum opinions that have been issued in this case (*e.g.*, ECF Nos. 42, 64, 77, 92, 170), some familiarity with the underlying facts of the parties' dispute is presumed. During discovery, Defendants American Capital, Ltd., Scientific Protein Laboratories, Inc., and SMG (together, "Defendants") requested that Plaintiffs produce all claims

handling materials relating to the underlying heparin and personal injury lawsuits involving Defendants. In response, Travelers produced a limited number of claims handling documents from August 2008, but withheld approximately 596 other documents, most of which were created on or after September 1, 2008. Travelers also provided a privilege log indicating that each of the withheld documents is protected by both the attorney-client privilege and the work product doctrine. (ECF No. 122-5).

Defendants moved to compel, arguing that the documents withheld by Plaintiffs are not protected by the attorney-client privilege or the work product protection and that, in any event, Travelers waived any privilege or protection that may have otherwise attached to the documents by asserting a rescission claim that places at issue the extent and timing of Travelers' knowledge regarding the falsity of certain representations made by American Capital in its insurance applications. (ECF No. 119). On December 21, 2012, after conducting a motions hearing, Judge Schulze issued an oral ruling granting Defendants' motion, which she later confirmed in a paperless order. (ECF Nos. 147, 148). As to the applicable legal principles, Judge Schulze first held that the "general rule" is that documents "either shared with or created by lawyers including facts and non-legal opinions and thoughts about the facts" are within an insurance

company's "ordinary course of business" and thus are not protected by either the attorney-client privilege or the work product protection doctrine. (ECF No. 154-1, at 77). Second, Judge Schulze held that any documents created pursuant to the Maryland Insurance Regulations are not protected at all. (*Id.*). Third, Judge Schulze held that "ordinarily, a factual investigation regarding coverage that is done by an insurance company is not protected, whether it is performed by in-house or outside counsel." (*Id.*). Applying these principles to the facts presented to her, Judge Schulze went on to conclude that this case "moved outside of that ordinary business function on September 18, 2[008]," when American Capital refused to meet with Travelers to discuss coverage for the underlying heparin suits. Accordingly, Judge Schulze ruled that "there is protection" for documents created after this date. (*Id.* at 78). Judge Schulze further held that, as to those documents that were presumptively protected (*i.e.*, those created before September 18, 2008), Travelers waived the documents' protected status by asserting a rescission claim that turns, in part, on the extent and timing of Travelers' knowledge about American Capital's purported misrepresentations in its applications for the subject policies.

Plaintiffs filed numerous objections to Judge Schulze's ruling. (ECF No. 154). Relevant to the instant motion for

reconsideration, Plaintiffs argued that Judge Schulze clearly erred in determining that Travelers' communications with its in-house and outside coverage counsel that occurred prior to September 18, 2008, are not protected by the attorney-client privilege. (*Id.* at 11-18). *First*, Plaintiffs contended that, by tying the applicability of the attorney-client privilege to the date when Plaintiffs reasonably anticipated coverage litigation about the heparin lawsuits, Judge Schulze improperly conflated the attorney-client privilege with the work product doctrine. (*Id.* at 13). *Second*, Plaintiffs contended that Judge Schulze clearly erred by concluding that, before September 18, Travelers consulted with counsel primarily for the business purpose of adjusting American Capital's insurance claims because "[n]othing in the record suggests that coverage counsel was retained to conduct a factual investigation regarding coverage or do anything other than provide legal advice." (*Id.* at 12-13). In support of this argument, Plaintiffs cited to the deposition testimony and affidavit of Edward Zawitoski, who averred that, at all times, he held responsibility for adjusting American Capital's claim and consulted counsel only for the purpose of seeking legal advice. (*Id.* at 15-16).

By memorandum opinion and order issued on February 11, 2013, the court overruled Plaintiffs' objections in part and sustained them in part. (ECF Nos. 170 & 171). Applying the

deferential standard of review required by Fed.R.Civ.P. 72(a), the court found no clear error in Judge Schulze's conclusions regarding the presumptive applicability of the attorney-client privilege and the work product protection. (ECF No. 170, at 12-16). Specifically with respect to the attorney-client privilege, the court interpreted Judge Schulze's ruling as holding that Plaintiffs failed to meet their evidentiary burden of establishing the privilege's presumptive applicability to those documents created before September 18, 2008, because it was only as of that date when Judge Schulze viewed the evidence as establishing that Plaintiffs were consulting with coverage counsel primarily in a legal (as opposed to a business) capacity. (*Id.* at 15-16). The court went on to uphold Judge Schulze's waiver ruling, but sustained Travelers' objections as to the scope of the relief awarded. (*Id.* at 17-23).

On February 15, 2013, Plaintiffs filed the instant motion seeking reconsideration of the "limited portion" of the court's ruling regarding the applicability of the attorney-client privilege prior to September 18, 2008. (ECF No. 172). Defendants filed an opposition (ECF No. 177), and Plaintiffs replied (ECF No. 179).

## II.  **Standard of Review**

Because Plaintiffs seek reconsideration of a non-final, interlocutory order, their motion is properly analyzed under

Fed.R.Civ.P. 54(b). *See* Fed.R.Civ.P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). The precise standard governing a motion for reconsideration of an interlocutory order is unclear. Although the standards articulated in Rules 59(e) and 60(b) are not binding in an analysis of Rule 54(b) motions, *see Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003), courts frequently look to these standards for guidance in considering such motions, *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F.Supp.2d 559, 565-66 (M.D.N.C. 2005). The *Akeva* court recognized that

> [p]ublic policy favors an end to litigation and recognizes that efficient operation requires the avoidance of re-arguing questions that have already been decided. Most courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions. Courts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice.

*Id.* (citations omitted); *see also Beyond Sys., Inc. v. Kraft Foods, Inc.*, No. PJM-08-409, 2010 WL 3059344, at *1-2 (D.Md.

Aug. 4, 2010) (applying this three-part test when evaluating a motion for reconsideration under Rule 54(b)). A motion for reconsideration under Rule 54(b) may not be used merely to reiterate arguments previously rejected by the court. *Beyond Sys., Inc.*, 2010 WL 3059344, at *2.

## III. Analysis

In their motion, Plaintiffs do not proffer any newly available evidence or identify any intervening change in controlling law. Instead, Plaintiffs spend five pages arguing that Judge Schulze committed clear error in ruling on the applicability of the attorney-client privilege to Plaintiffs' claims handling materials. In other words, Plaintiffs merely reiterate the arguments that were previously rejected by this court in its February 11, 2013, order. Such arguments simply are not a valid basis for relief under Rule 54(b).

Although the court's inquiry under Rule 54(b) could end here, some of Plaintiffs' arguments merit additional discussion. First, Plaintiffs assert that Judge Schulze – and, by extension, this court – "made a critical error of law" by concluding that an insurance company has no ability to consult counsel for legal advice while it is performing the ordinary business function of claims handling. (ECF No. 174, at 2). Plaintiffs further posit that leaving this "significant legal error" intact could have consequences even beyond this dispute, as it would deprive *any*

business "of the ability to seek legal advice in confidence when that legal advice relates to an underlying ordinary business function." (*Id.* at 3).

At bottom, Plaintiffs' arguments misapprehend Judge Schulze's order and this court's interpretation thereof. Nothing in either ruling stands for the proposition that an insurance company cannot seek legal advice while performing its ordinary business function of claims handling (let alone that a business cannot seek legal advice in connection with its performance of an ordinary business function). Rather, both rulings reaffirm the well-established evidentiary tenet that a proponent of the attorney-client privilege bears the burden of establishing the privilege's existence and applicability[1] – a burden that, according to Judge Schulze, Travelers did not meet as to documents and communications created prior to September 18, 2008. Put differently, Judge Schulze did not hold that the pre-September 18 communications and documents listed in Travelers' privilege log could not *possibly* have involved the confidential provision of legal (as opposed to business) advice from Travelers' coverage counsel. Rather, Judge Schulze held that Travelers failed to establish that the pre-September 18 documents and communications did, *in fact*, involve the

---

[1] *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 351 Md. 396, 415 (1998).

confidential provision of legal (as opposed to business) advice from Travelers' coverage counsel.

As discussed in the court's prior ruling, this factual finding by Judge Schulze cannot be deemed clearly erroneous in light of the evidence and arguments offered by Travelers. At oral argument, Plaintiffs' counsel conceded the following points: (1) that claims handling is an insurer's state-regulated business function; (2) that, in the third-party context, the claims handling process includes making a determination as to whether the policy affords coverage for the underlying claim; and (3) where an insurer hires an attorney to perform the coverage analysis and that attorney "is not being called upon for legal advice," information in the attorney's files and communications between the insurer and the attorney may be subject to production. (ECF No. 149, at 55-57). Plaintiffs' counsel maintained, however, that this case is distinguishable from such circumstances because Travelers only ever called upon coverage counsel to provide legal advice, as evidenced by the deposition and affidavit testimony of Mr. Zawitoski. (*Id.*).

Had Plaintiffs used this argument as the basis for a more targeted, selective assertion of the attorney-client privilege, their objections to Judge Schulze's evidentiary findings may have been more convincing. Instead, Plaintiffs then made a

rather significant leap from their initial premise (*i.e.*, that Travelers only ever consulted coverage counsel for legal advice) to making a broad, near-blanket assertion of the attorney-client privilege as to all claims handling materials created after September 2, 2008. The withheld documents included many emails between and among non-attorney Travelers employees that did not include coverage counsel but, according to Plaintiffs, involved discussions of "information necessary for legal advice." (*See, e.g.*, ECF No. 122-5, Travelers' Privilege Log, Entry Nos. 345, 356-85, 413, 455-58, 464-65, 526, 542, 544). Likewise, Travelers conceded that its assertion of privilege encompassed materials reflecting factual investigations and coverage analysis, but maintained that these activities could not be separated from the confidential provision of legal advice from counsel. (ECF No. 78, at 53 ("I am not sure how you can separate [coverage counsel's] mental impressions from the work that [the attorneys] did during the period of time when [they] had been hired to look at coverage.")).

As Defendants observe in their opposition to the instant motion (ECF No. 177), Plaintiffs essentially took an "all-in" approach to their assertion of the attorney-client privilege. They relied on the testimony of a single Travelers employee in an attempt to shield virtually all materials reflecting any factual investigation or coverage analysis conducted after the

retention of counsel on September 2, 2008. Plaintiffs never offered to provide the withheld documents to Judge Schulze for *in camera* review, nor did they offer any detailed explanations of the nature of the legal advice sought from counsel on a document-by-document basis.[2] In light of these strategic decisions, it cannot be said that Judge Schulze committed clear error in concluding that Plaintiffs failed to meet their burden of establishing that *all* of withheld documents created between September 2, 2008, and September 18, 2008, are necessarily protected by the attorney-client privilege. *See, e.g., Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 408 (concluding that proponents who made "sweeping assertions" of the attorney-client privilege failed to meet their burden where the supporting affidavits were "general and conclusory" and did not set forth factual support for the assertion of the attorney-client privilege on a "document-by-document" basis). Accordingly, and for the reasons set forth in the court's prior opinion, Plaintiffs' third bite at the apple fails.

---

[2] Indeed, Plaintiffs' argument that this court's order somehow "denies Travelers any opportunity to challenge [the presumption that counsel was providing business as opposed to legal advice] as to particular communications and documents" (ECF No. 174, at 5) is particularly unpersuasive in light of their steadfast silence – even now – on the issue of *in camera* review.

As before, the court will not endeavor to determine what portions (if any) of this Memorandum Opinion contain information that is under seal. Rather, the Memorandum Opinion will be filed under seal, and the parties are directed to review it and suggest jointly any necessary redactions that should be made before it is released to the public docket.

## IV. Conclusion

For the foregoing reasons, the motion for reconsideration filed by Plaintiffs The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America will be denied. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
