FILED
LOGGED ENTERED
RECEIVED
DEC 24 2013
CLERK, AT GREENBELT
U.S. DISTRICT COURT
BY DISTRICT OF MARYLAND
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARTER OAK FIRE INSURANCE :
COMPANY, et al. :

  v. : Civil Action No. DKC 09-0100

   :

AMERICAN CAPITAL, LTD., et al. :

   :

**MEMORANDUM OPINION**

Presently pending and ready for review in this insurance case is an objection filed by Plaintiffs The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America (together, "Travelers" or "Plaintiffs") to a discovery ruling issued by United States Magistrate Judge Jillyn K. Schulze on July 24, 2013 granting Defendants' Motion to Compel Production of Documents Based on Newly Discovered Evidence (ECF Nos. 213 & 214), and Defendants' motion to seal filings in connection with Defendants' responses to Plaintiffs' objections (ECF Nos. 217 & 226). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiffs' objection will be overruled. Defendants' motion to seal will be granted.

## I. Background

On November 27, 2012, this case was referred to Magistrate Judge Schulze for resolution of all discovery disputes and for

determination of non-dispositive matters. (ECF No. 145). As numerous opinions in this case have come before this one, some familiarity with the facts is assumed. (*See* ECF Nos. 42, 64, 77, 92, 170, & 184). Because Plaintiffs object to a ruling regarding a discovery request, however, a brief background on the underlying factual and procedural issues in the case is necessary.

Beginning in 2008, Defendant American Capital, Ltd. ("American Capital"), and Defendant Scientific Protein Laboratories, LLC ("SPL") became involved in more than one hundred (100) suits pertaining to allegedly defective drug heparin.[1] Many of the complaints in these lawsuits allege that SPL is a subsidiary of American Capital. A dispute subsequently arose about whether the underlying heparin lawsuits implicate certain primary and umbrella insurance policies issued to American Capital by Plaintiffs for the years 2006 through 2009 ("the Policies"). Travelers filed the instant declaratory judgment action seeking rescission or reformation of the Policies, or, alternatively, a declaration that Travelers does not owe defense or indemnity coverage to either American Capital

---

[1] According to the second amended complaint, "[h]eparin is a drug that is used to prevent the formation of clots within the blood of humans." (ECF No. 67 ¶ 21).

or any of its alleged subsidiaries for the underlying heparin lawsuits.[2]

During discovery, Defendants requested that Plaintiffs produce all claims handling materials relating to the underlying heparin and personal injury lawsuits involving Defendants. In response, Travelers produced a limited number of claims handling documents from August 2008, but withheld approximately 596 other documents, most of which were created on or after September 2, 2008 on the ground that such documents were created in anticipation of litigation and were thus protected. Travelers also provided a privilege log indicating that each of the withheld documents is protected by both the attorney-client privilege and the work product doctrine. (ECF No. 122-5).

On November 20, 2012, Defendants moved to compel the production of the withheld documents based on three arguments. (*See* ECF No. 125). First, Defendants argued that the documents are not covered by the attorney-client privilege because, during the relevant time period, Travelers' in-house and outside counsel did not function as legal advisers but instead served as

---

[2] In addition to the underlying heparin lawsuits involving SPL, Plaintiffs also seek a declaration that the Policies do not afford coverage for either American Capital or Defendant Spectator Management Group ("SMG") in connection with a separate lawsuit involving an injury suffered by a spectator at a sporting event. According to the second amended complaint, the complaint in that lawsuit alleges that SMG specializes in sport-arena management and American Capital is SMG's parent company. (ECF No. 67 ¶ 29).

claim handlers performing an ordinary business function. Second, Defendants contended that the documents are not protected by the work product doctrine because they were prepared in the ordinary course of Travelers' state-regulated business of claims handling rather than in anticipation of litigation. Third, Defendants posited that, in any event, Travelers waived any privilege or protection that may have otherwise attached to the documents by asserting a rescission claim that places at issue the extent and timing of Travelers' knowledge regarding the falsity of certain representations made by American Capital in its insurance applications. (ECF No. 125).

On December 21, 2012, after conducting an extensive motions hearing, Judge Schulze issued an oral ruling granting Defendants' motion, which she later confirmed in a paperless order. (ECF Nos. 147, 148).[3] As to the applicable legal principles, Judge Schulze first held that the "general rule" is that documents "either shared with or created by lawyers including facts and non-legal opinions and thoughts about the facts" are within an insurance company's "ordinary course of

_____

[3] Judge Schulze ruled that Plaintiffs must produce to Defendants: all claims handling material prior to September 18, 2008; all claims handling material created on or after September 18, 2008, with the exception of attorney mental impressions or opinion which may be redacted; reserve information from September 2, 2008 forward; and reinsurance information from June 1, 2006 forward. (ECF No. 148).

4

business" and thus are not protected by either the attorney-client privilege or the work product protection doctrine. (ECF No. 154-1, at 77). Second, Judge Schulze held that any documents created pursuant to the Maryland Insurance Regulations are not protected at all. (*Id.*). Third, Judge Schulze held that "ordinarily, a factual investigation regarding coverage that is done by an insurance company is not protected, whether it is performed by in-house or outside counsel." (*Id.*). Applying these principles to the facts presented to her, Judge Schulze went on to conclude that this case "moved outside of that ordinary business function on September 18, 2[008]," when American Capital refused to meet with Travelers to discuss coverage for the underlying heparin suits. Accordingly, Judge Schulze ruled that "there is protection" for documents created after September 18, 2008. (*Id.* at 78). Judge Schulze further held that, as to those documents that were presumptively protected (*i.e.,* those created after September 18, 2008), Travelers waived the documents' protected status by asserting a rescission claim that turns, in part, on the extent and timing of Travelers' knowledge about American Capital's purported misrepresentations in its applications for the subject policies.

Plaintiffs filed numerous objections to Judge Schulze's ruling. (ECF No. 154). Among other things, Plaintiffs argued that Judge Schulze clearly erred in determining that Travelers'

communications with its in-house and outside coverage counsel that occurred prior to September 18, 2008 are not protected by the attorney-client privilege. (*Id.* at 11-18). First, Plaintiffs contended that, by tying the applicability of the attorney-client privilege to the date when Plaintiffs reasonably anticipated coverage litigation about the heparin lawsuits, Judge Schulze improperly conflated the attorney-client privilege with the work product doctrine. (*Id.* at 13). Second, Plaintiffs argued that Judge Schulze clearly erred by concluding that, before September 18, 2008 Travelers consulted with counsel primarily for the business purpose of adjusting American Capital's insurance claims because "[n]othing in the record suggests that coverage counsel was retained to conduct a factual investigation regarding coverage or do anything other than provide legal advice." (*Id.* at 12-13). In support of this argument, Plaintiffs cited to the deposition testimony and affidavit of Edward Zawitowski, a non-attorney claims handler at Travelers, ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

(*Id.* at 15-16).

By memorandum opinion and order issued on February 11, 2013, the undersigned overruled Plaintiffs' objections in part and sustained them in part. (ECF Nos. 170 & 171). Applying the

deferential standard of review required by Federal Rule of Civil Procedure 72(a), I found no clear error in Judge Schulze's conclusions regarding the presumptive applicability of the attorney-client privilege and the work product protection. (ECF No. 170, at 12-16). Specifically with respect to the attorney-client privilege, I interpreted Judge Schulze's ruling as holding that Plaintiffs failed to meet their evidentiary burden of establishing the privilege's presumptive applicability to those documents created before September 18, 2008, because it was only as of that date when Judge Schulze viewed the evidence as establishing that Plaintiffs were consulting with coverage counsel primarily in a legal (as opposed to a business) capacity. (*Id.* at 15-16). The opinion went on to uphold Judge Schulze's ruling that Plaintiffs waived privilege by asserting a rescission claim, but sustained Travelers' objections as to the scope of the relief awarded. Specifically, I limited Judge Schulze's ruling on the waiver of privilege for the documents related to Plaintiffs' rescission claim that were created after September 18, 2008.[4] The opinion confirmed that "it is

_____

[4] As a result of the waiver ruling, Judge Schulze ordered production of *all* withheld documents created after September 18, 2008, with redactions only for attorney impressions and opinions. I sustained Plaintiffs' objection on this ruling, holding that "what is relevant to the issue of promptness is limited to the timing of Plaintiffs' investigation into, and conclusions about, the facts that American Capital allegedly misrepresented in its insurance applications. (ECF No. 170, at

irrelevant whether such factual information is contained in documents that were created by Travelers' non-attorney claims employees, in-house counsel, or outside coverage attorneys. Consistent with Judge Schulze's ruling, attorney impressions and legal opinions may be redacted." (ECF No. 170, at 26). Furthermore, I instructed that "[i]f Plaintiffs contend that any [post-September 18, 2008] documents should be withheld in their entirety because they contain no factual information relevant to the issue of promptness, such documents must be submitted to Judge Schulze for *in camera* review" by March 1, 2013. (*Id.*).[5]

On March 1, 2013, Plaintiffs produced to Defendants more than 4,900 pages of previously withheld documents pursuant to

---

25). Consequently, I ordered that Plaintiffs produce all documents (or portions thereof) indicating – as a factual matter – when Travelers began to investigate whether, or reached a conclusion that: (1) American Capital had subsidiaries; (2) American Capital acquired SPL in 2006; (3) American Capital acquired SMG in June 2007; (4) American Capital had been named as a defendant in a heparin lawsuit prior to submitting its 2008 renewal application to Travelers; (5) the suspected tainted heparin and heparin's active pharmaceutical ingredient had been recalled in early 2008; (6) the allegedly tainted heparin ingredients had been processed in China; (7) SPL participated in a joint venture that processed heparin sodium API in China; and (8) the heparin lawsuits predating American Capital's 2008 renewal application sought damages in excess of $10,000. (*Id.*).

[5] On February 15, 2013, Plaintiffs filed a motion for reconsideration of the "limited portion" of the undersigned's ruling regarding the applicability of the attorney-client privilege to documents created before September 18, 2008. (ECF No. 172). That motion was denied on May 17, 2013 because Plaintiffs simply reiterated previously rejected arguments. (ECF No. 184, at 7).

the February 11, 2013 Order. (ECF No. 193, at 6). On the same date, Plaintiffs also submitted to Judge Schulze for *in camera* review all of the claims handling documents from Plaintiffs' July 27, 2012 privilege log that Plaintiffs withheld from Defendants in their entirety because Plaintiffs believed those documents did not fall into any of the eight categories enumerated in the February 11, 2013 Order; Plaintiff did not, however, include an index linking the documents to particular privilege log entries or meaningfully organize the documents to facilitate the court's review. (*See* ECF No. 183, at 6, Hr'g. Tr.). Consequently, on April 3, 2013, Judge Schulze held a telephonic hearing, during which she directed Plaintiffs to resubmit the documents in an indexed fashion accompanied by a new privilege log. She further directed Plaintiffs' counsel to certify that none of the post-September 18, 2008 documents in Plaintiffs' privilege log had any information responsive to the February 11, 2013 Order. (ECF No. 183, at 7, Hr'g. Tr.). On April 12, 2013, Plaintiffs resubmitted to Judge Schulze for *in camera* review the fully withheld post-September 18, 2008 documents in tabbed format with accompanying indices (ECF No. 193, at 11), along with a certification from James E. Rocap, III, one of Plaintiffs' attorneys, who attested that he personally reviewed each document submitted for *in camera* review and believed that "none of [the] documents has any information

9

that is on Judge Chasanow's list of relevant facts." (ECF No. 193-9 ¶ 8).[6]  On April 26, 2013, Plaintiffs also provided more descriptive versions of their July 27, 2012 and January 18, 2013 privilege logs.

On May 9, 2013, Defendants submitted a document entitled "Defendants' Opposition to Plaintiffs' Counsel's certification of Plaintiffs' *Vaughn Indices*,"[7] which Judge Schulze construed as a motion to compel production of claims handling materials based on newly discovered evidence.  (*See* ECF Nos. 186 & 193).[8]  In this submission, Defendants argued that newly discovered evidence, including two new depositions of Mr. Zawitoski and Ms. Seitz, Travelers' in-house counsel, revealed that Plaintiffs did not anticipate litigation "any earlier than December 8, 2008, .

---

[6] Mr. Rocap noted that Plaintiffs included drafts of the complaint in the set of documents submitted for *in camera* review because "they are not statements of facts, but are counsel's non-final formulation of allegations.  They are also, in their entirety, attorney impressions or opinions."  (ECF No. 193-9 ¶ 8).  Defendants later explained their position that they "do not seek the legal analysis reflected in draft complaints and draft correspondence, but if there are recitations of purported facts on those complaints (which there must be) or in draft correspondence, Defendants are entitled to see those facts pursuant to the Court's Order."  (ECF No. 195, at 18).

[7] Plaintiffs assert that they did not submit "'Vaughn indices' nor did they understand the Court to have directed them to do so."  (ECF No. 217, at 2 n.2).

[8] As Plaintiffs' counsel notes, this motion was submitted directly to Judge Schulze without docketing on PACER.  The motion was subsequently docketed on July 17, 2013 as ECF No. 193.

. . or December 19, 2008" (ECF No. 193, at 6) and that Plaintiffs were performing business, rather than legal, claims handling functions before December 2008. Consequently, Defendants sought production of nine (9) categories of pre-December 2008 documents without redactions, with the exception of "forty or so" documents identified on the privilege log that Defendants agreed were protected. (ECF No. 192, at 7, 29-37). Plaintiffs opposed this motion on June 7, 2013, arguing that Defendants are estopped from proposing a new "anticipation of litigation" date because the evidence was previously available to them, and that in any event, Plaintiffs "reasonably anticipated litigation by September 2008." (ECF No. 199, at 19).[9] In the opposition, Plaintiffs stated that "[i]f the Court is inclined to revisit these issues, Plaintiffs are prepared to provide – on an *in camera* basis – a further Declaration of counsel, to provide the Court with additional information regarding counsel's actions in the Fall 2008. Because such a Declaration would contain privileged information, Plaintiffs are first submitting, simultaneously with this Opposition, a Motion for Leave to submit the Declaration on an *in camera* basis." (*Id*. at 47).

---

[9] The opposition was docketed on July 17, 2013. (ECF No. 199).

On the same date, Plaintiffs filed a motion for leave to submit declaration of Paul Janaskie, Esq. *in camera*; in that motion, Plaintiffs argued that although they deemed the privilege logs "sufficient to allow the Court to evaluate [the] privilege claims . . . in an abundance of caution . . . if deemed necessary by the Court, Plaintiffs are prepared to submit to the Court *in camera* a declaration executed by Mr. Paul Janaskie, Plaintiffs' outside coverage counsel, in support of Plaintiffs' assertions of attorney-client privilege and work product protections." (ECF No. 202, at 2).[10] Defendants replied to Plaintiffs' opposition and motion for leave to submit *in camera* declaration of Paul Janaskie on June 26, 2013, arguing that Plaintiffs should not be permitted to submit an *in* camera declaration because ███████████████████████████ ███████████████████████████████ Mr. Janaskie is a fact witness. (ECF No. 195, at 17-18). Defendants further argued that Plaintiffs' broad assertions of privilege and previous submission of documents for *in camera* review, without "Defendants having a chance to fact check their statements" militated against granting Plaintiffs' motion for yet another *in camera* submission. (*Id.* at 18).

---

[10] This motion was also docketed on July 17, 2013. (ECF No. 202).

On July 24, 2013, Judge Schulze granted Defendants' motion to compel and deferred ruling on Plaintiff's motion to submit an *in camera* declaration of Paul Janaskie. (ECF No. 213). Judge Schulze ordered Plaintiffs to produce all claims handling documents created before December 8, 2008. (ECF No. 214).[11] Plaintiffs filed an objection to the July 24, 2013 Order on the sole ground that Judge Schulze erred by not considering Plaintiffs' proffered *in camera* declaration of Paul Janaskie in deciding Defendants' motion to compel. (ECF No. 217). Defendants responded to Plaintiffs' opposition on August 29, 2013 (ECF No. 223) and Plaintiffs replied on September 16, 2013 (ECF No. 234). Defendants also filed a motion to seal on August 29, 2013, which Plaintiffs did not oppose (ECF No. 226).

## II. Standard of Review

Under 28 U.S.C. § 636(b)(1), non-dispositive pretrial matters may be referred to a magistrate judge for hearing and determination. A district judge may modify or set aside any portion of a magistrate judge's non-dispositive ruling "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.; see also* Fed.R.Civ.P.

---

[11] In addition to the nine categories of pre-December 2008 documents, Defendants sought disclosure of two additional categories of withheld documents post-December 8, 2008. (ECF No. 193, at 36). Judge Schulze deferred consideration of Defendants' claim that Plaintiffs have waived protection for *post*-December 18 documents relating to counsels' rescission advice. (ECF No. 213, at 11).

72(a); Local Rule 301.5.a. "The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C). The "clearly erroneous" standard applies to factual findings, while legal conclusions will be rejected if they are "contrary to law." *MMI Prods v. Long*, 231 F.R.D. 215, 218 (D.Md. 2005).

> Under the clearly erroneous standard, the reviewing court is not to ask whether the finding is the best or only conclusion permissible based on the evidence. Nor is it to substitute its own conclusions for that of the magistrate judge. *See Tri-Star Airlines, Inc. v. Willis Careen Corp.*, 75 F.Supp.2d 835, 839 (W.D.Tenn. 1999). Rather, the court is only required to determine whether the magistrate judge's findings are reasonable and supported by the evidence. *Id.* "It is not the function of objections to discovery rulings to allow wholesale relitigation of issues resolved by the magistrate judge." *Buchanan v. Consol. Stores Corp.*, 206 F.R.D. 123 (D.Md. 2002).

*Int'l Ass'n of Machinsits & Aerospace Workers v. Wener-Matsuda*, 390 F.Supp.2d 479, 485 (D.Md. 2005).

**III. Analysis**

**A.    Plaintiffs' Objections to Judge Schulze's July 24, 2013 Order**

On July 24, 2013, Judge Schulze issued a memorandum opinion and order granting - based on newly discovered evidence - Defendants' motion to compel pre-December 8, 2008 claims handling documents and deferring ruling on Plaintiff' motion for

14

leave to submit declaration of Paul Janaskie, Esq. *In Camera*. (ECF Nos. 213 & 214).[12]  On August 12, 2013, Plaintiffs objected to the July 24, 2013 Order on the ground that Judge Schulze should not have made factual findings without considering Plaintiffs' proffered *in camera* submission in support of their privilege and work product claims. (ECF No. 217, at 2).[13]

In the memorandum opinion, Judge Schulze stated that she "will defer *in camera* review of documents dated after December 8, 2008, and thus will defer consideration of Defendants' claim that Plaintiffs have waived protection for post-December 18 documents relating to counsels' rescission advice, and consideration of Plaintiffs' motion for leave to submit an *in camera* document to supplement the privilege log." (ECF No. 213, at 11).  Judge Schulze further stated that "[o]nce Defendants have received Plaintiffs' pre-December 8, 2008 documents, they may, within thirty days, supplement their previously submitted objections to Plaintiffs' privilege logs.  The court will then

---

[12]  Defendants identified forty-four (44) privileged documents on Plaintiffs' privilege log which they did *not* seek Plaintiffs to produce. (ECF No. 193, at 37).  Thus, the July 24, 2013 Order to produce pre-December 8, 2008 documents does not encompass these documents.

[13]  Plaintiffs assert that the July 24, 2013 ruling was docketed, but counsel first received the Order on August 5, 2013. (ECF No. 217, at 4 n.6).  Thus, Plaintiffs timely objected within fourteen (14) days from receiving the Order. *See* Local Rule 301.

determine how to handle any remaining *in camera* review."
(*Id.*).[14] Judge Schulze also observed that Plaintiffs' April 12,
2013 resubmission of documents previously withheld for *in camera*
review (pursuant to the February 11, 2013 Order) contained
documents dated prior to December 8, 2008, "and this [would] not
need *in camera* review" given Judge Schulze's finding that
Plaintiffs did not anticipate litigation until December 8, 2008.
Thus, Judge Schulze instructed Plaintiffs to produce any
documents created before that date because they are not
protected, with the exception of the forty-four (44) privileged
documents which Defendants did not request. (ECF No. 213, at 11
n.4). Judge Schulze stated that in determining how to handle
any remaining *in camera* review, she would consider "the fact
that Plaintiffs have unduly delayed discovery . . . [and]
inappropriately responded to the order that they produce

---

[14] Plaintiffs produced pre-December 8, 2008 claims handling
documents on August 15, 2013 and August 22, 2013 and
"transcribed versions of handwritten notes that were part of
those August 11 and August 23 productions on September 12,
2013." (ECF No. 235 ¶ 3). Defendants were scheduled to depose
Tracy Seitz, Travelers' in-house counsel, on October 8, 2013
"specifically on the subject matter of the documents produced by
Plaintiffs pursuant to the Court's July 24, 2013 Order." (*Id.* ¶
4). On September 19, 2013, Defendants requested – and
Plaintiffs consented to - an extension of time until October 30,
2013 to file, if necessary, a motion to compel Plaintiffs' post-
December 8, 2008 claims handling documents, in order to have
sufficient time to incorporate Ms. Seitz's deposition testimony
into any submission Defendants may make. (*Id.* ¶ 5). Judge
Schulze granted Defendants' motion for extension of time on
September 23, 2013. (ECF No. 237).

documents for *in camera* review, dropping off two large boxes . .
. without any attempt to organize or meaningfully identify any
document, much less match any document with an entry on a
privilege log." (*Id.* at 11).[15]

Plaintiffs state that although they disagree with Judge
Schulze's factual findings, "the ground for this Objection is
limited to the Magistrate Judge's decision not to consider
Plaintiffs' proffered *in camera* submission in further support of
their privilege claims." (*Id.* at 6). Plaintiffs essentially
challenge Judge Schulze's decision to defer consideration of the
Plaintiffs' proffered declaration *in camera* on the ground that
she made factual findings on an allegedly incomplete record.
Plaintiffs argue that by proffering the declaration, they
attempted "to submit a more particularized showing" that the
pre-December 18, 2008 documents were privileged. (ECF No. 217,
at 8).

Judge Schulze acted within her discretion in deciding
whether to conduct an *in camera* review of Paul Janaskie's

---

[15]    Judge Schulze noted that this "dump on the court alone
could have justified a ruling that Plaintiffs were not entitled
to withhold those documents." (ECF No. 213, at 11); *see Barr
Marine Products Co., Inc. v. Borg-Warner Corp.*, 84 F.R.D. 631,
636 (E.D.Pa. 1979) ("[A] party resisting discovery on the ground
of the attorney-client privilege must by affidavit show
sufficient [f]acts as to bring the identified and described
document within the narrow confines of the privilege. Nor will
submitting a batch of documents to the Court [i]n camera provide
an adequate or suitable substitute.").

declaration before ruling on Defendants' motion to compel. The United States Court of Appeals for the Fourth Circuit has held that:

> [e]videntiary privileges may serve as valid bases to block the disclosure of certain types of evidence, and the validity of such privileges *may* be tested by in camera and ex parte proceedings before the court "for the limited purpose of determining whether the asserted privilege is genuinely applicable."

*United States v. Abu Ali*, 528 F.3d 210, 245 (4th Cir. 2008) (*quoting Abourezk v. Reagan*, 785 F.2d 1043, 1060 (D.C. Cir. 1986)) (emphasis added). When a party refuses to produce documents during discovery on the basis that they are privileged or protected, it has the burden of providing an evidentiary basis for that claim. Fed.R.Civ.P. 26(b)(5), Discovery Guidelines 9.c; *see also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 254 n.2 (D.Md. 2008). Specifically, a party claiming privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed.R.Civ.P. 26(b)(5)(A)(ii). This requirement was added in the 1993 amendments to the Rules of Civil Procedure, and in the words of the advisory committee:

> The party [asserting privilege/protection] must also provide sufficient information to

> enable other parties to evaluate the
> applicability of the claimed privilege or
> protection. Although the person from whom
> the discovery is sought decides whether to
> claim a privilege or protection, *the court
> ultimately decides whether, if this claim is
> challenged, the privilege or protection
> applies*. Providing information pertinent to
> the applicability of the privilege or
> protection should *reduce* the need for in
> camera examination of the documents.

Fed.R.Civ.P. 26 advisory committee's note (emphasis added).

In written discovery, ensuring that a privilege or protection is asserted properly in the first instance and maintained thereafter involves several steps. "First, pursuant to Federal Rule of Civil Procedure 26(b)(5), the party asserting privilege/protection must do so with particularity for each document, or category of documents, for which privilege/protection is claimed." *Elat v. Ngoubene*, No. PWG-11-29-31, 2013 WL 4478190, at *5 (D.Md. Aug. 16, 2013). A party can sustain this burden through a properly prepared privilege log that identifies each document withheld, and contains information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter. *See, e.g.*, Discovery Guideline, 10.d; Paul W. Grimm, Charles S. Fax, & Paul Mark Sandler, *Discovery Problems and Their Solutions*, 62-64 (2005) (suggesting contents of effective privilege log). If, after

19

this has been done, the requesting party challenges the sufficiency of the asserted privilege/protection, the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis - by affidavit, deposition transcript, or other evidence - for each element of each privilege/protection claimed for each document or category of document. A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden. *Elat*, No. PWG-11-2931, 2013 WL 4478190, at *5. "If it makes this showing and the requesting party still contests the assertion of privilege/protection, then the dispute is ready to submit to the court, which, after looking at the evidentiary support offered by the asserting party, can rule on the merits of the claim *or* order that the disputed documents be produced for *in camera* inspection." *Id.* (emphasis added).

Here, Plaintiffs could not establish that the pre-December 8, 2008 claims handling documents were privileged. Thus, Plaintiffs now argue that Judge Schulze rejected their privilege claims based on an incomplete record. Plaintiffs, however, have not shown that the July 24, 2013 ruling was premised upon an incomplete record and that Judge Schulze's decision to defer consideration of Plaintiff's motion for leave to submit Paul Janaskie's declaration *in camera* was clear error or contrary to

law. In fact, Judge Schulze granted Defendants' second motion to compel on July 24, 2013 – and determined that Plaintiffs did not anticipate litigation until after December 8, 2008 – after considering new evidence showing that "at least two of Plaintiffs' employees did not anticipate litigation as early as previously claimed" and after reviewing the documents that Plaintiffs submitted for *in camera* review. (ECF No. 213, at 6). Specifically, in evaluating the merits of Defendants' new motion to compel production of claims handling documents, Judge Schulze reviewed Tracy Seitz's deposition from April 26, 2013 (ECF No. 193-6), and Mr. Zawitoski's new deposition from April 9, 2013 (ECF No. 193-5, at 19-79), during which he "testified for the first time about activities performed by in-house and outside counsel after September 18, 2008." (ECF No. 213, at 4). Judge Schulze considered ████████████████████████████████████ ███ ████████ ████ ███ ████████████ ███ ███ ████████████ ████████ ████████ ███ ████████ ████ ████████ (ECF No. 193-22), ████████ ███ ████████ ███ ████████ ████████ ███ ████████ ████████ ████████ consequently, she concluded that many of the post-September 18, 2008 activities performed by Plaintiffs' in-house and outside counsel entailed "ordinary claims handling matters." (ECF No. 213, at 4); *see also Harper v. Auto-Owners Insurance Co.*, 138 F.R.D. 655, 662 (S.D.Ind. 1991) ("[m]ost courts have held that documents constituting any part of a factual inquiry

21

into or evaluation of a claim, undertaken in order to arrive at a claim decision, are produced in the ordinary course of an insurer's business and not work product."); *Schmidt v. California State Auto. Assoc.*, 127 F.R.D. 182, 184 (D.Nev. 1989) ("[t]he connection to possible litigation of the material being prepared must be sufficiently concrete so as to provide assurance that the routine claims processing material prepared in the ordinary course of the insurance business will not be immunized from discovery."); *Pete Rinaldi's Fast Foods v. Great Am. Ins. Co.*, 123 F.R.D. 198, 202 (M.D.N.C. 1988) ("[a]n insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate and make a decision with respect to claims made on it by its insured.").

For instance, in the April 26, 2013 deposition, Mr. Zawitoski ████████████████████████████████████

████████ ██ ██ ████ ████ ██ ██ ██

████ ████ █ ████ ████ ██ ████

████████████████████████████

████████████████████ (ECF No. 193-5, at

22). Mr. Zawitoski further testified ███ ████ ████

████ ██ ██ ████ ████ ██ ████ ██

████████████████ (*Id*. at 27) ███

████████ (*Id*. at 48). Mr. Zawitosky stated ███

█████████ ████████ ██ ████ █████ █████ ████ ████

████████████████████████████████████████ (*See id.* at

24-28, 48-50). Judge Schulze also considered Mr. Zawitosky's

testimony ███ ██ ██ ██ █████ █████ █████ ██ ██

██████████████████████████████████████████ (*Id.*

at 47). Judge Schulze recognized that Mr. Zawitosky's new

testimony ██████ ████ ██ ██ ███ █████ ██ ██

████████████████████████████████████████████

████ █████ ██ ████ █████ ██ ████ ██ ███

██████████████ Judge Schulze determined, however,

that this ████ █████ ██ ██ ███ ██████ ██ ██

████████ especially given ███████████████

████ █████ █████ ██ █████ █████ ██ █████ ████

████████████████████████████████████████████

████████████████████████████ (ECF No. 213,

at 5).[16]

Moreover, Judge Schulze assessed Ms. Seitz's deposition

from April 26, 2013, during which she testified ███████

███ ███ █████ █████ █ ██████ █████ ██ █████

██████████████████████ (ECF No. 193-6, at 22-23) ███

████████████████████████████████████████████



---

[16] The undersigned also previously agreed with Defendants
that "a fact finder could reasonably disregard Mr. Zawitosky's
testimony as being conclusory and self-serving, particularly
given Plaintiffs' broad assertion of privilege." (ECF No. 170,
at 16).

▆▆▆▆ (*id*. at 8). Ms. Seitz further explained ▆▆▆▆▆▆▆▆
▆▆▆ ▆▆▆ ▆▆▆▆ ▆▆▆ ▆▆ ▆▆▆▆ ▆▆ ▆▆▆▆ ▆▆▆
▆▆▆▆▆ ▆▆ ▆▆▆▆ (*Id*. at 9). Based on ▆▆▆
▆▆▆▆▆ ▆▆ ▆▆▆ ▆▆▆▆ ▆▆▆▆ ▆▆▆▆ ▆▆
▆▆▆▆▆ ▆▆▆▆ ▆▆ ▆▆▆ ▆▆▆▆ Judge Schulze
identified December 8, 2008, rather than September 18, 2008, as
the appropriate critical date when Plaintiffs may claim
attorney-client and work product protection, finding that, in
light of this new evidence, Plaintiffs did not sustain their
burden of showing that the pre-December 8, 2008 documents were
prepared in anticipation of litigation as opposed to the
ordinary business purpose of claims handling. (ECF No. 213, at
6-7); *see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray
Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992) (holding
that anticipation of litigation means that the document must
have been "prepared *because* of the prospect of litigation," and
not in the "ordinary course of business." (emphasis in
original)). For these reasons, Judge Schulze granted
Defendants' second motion to compel.

Plaintiffs contend that the proffered declaration of Paul
Janaskie would have aided Judge Schulze in determining whether
the pre-December 2008 documents are privileged. But Judge
Schulze relied on sufficient evidence in granting Defendants'
new motion to compel without having to consider any additional

24

proffered *in camera* material.    *See Prowess, Inc. v. RaySearch Laboratories AB*, No. WDQ-11-1357, 2013 WL 1856348, at *15 (D.Md. Apr. 30, 2013) (rejecting plaintiff's request to submit document *in camera*, where plaintiff argued that the "document would aid the Court in determining whether the documents that Defendants seek to compel are privileged."). In fact, in the motion for leave to submit Paul Janaskie's declaration *in camera*, *Plaintiffs* concede that "their existing privilege logs are *sufficient* to allow the court to evaluate those privilege claims, if it chooses to do so." (ECF No. 202, at 2) (emphasis added). Plaintiffs offered an *in camera* declaration only "in an abundance of caution and to facilitate such review, *if deemed necessary by the Court* . . . in support of Plaintiffs' assertions of attorney-client privilege and work product protections with respect to the *in camera* documents challenged by Defendants." (*Id.*) (emphasis added). Plaintiffs change their tune and now argue that Judge Schulze relied on an incomplete record, only *after* she ruled in Defendants' favor and deferred review of a proffered *in camera* declaration from Paul Janaskie – which declaration Plaintiffs initially argued was not necessary for her to review. Moreover, in opposing Defendants' motion to compel, Plaintiffs did *not* argue that the *in camera* declaration was essential to Judge Schulze's factual findings; instead, Plaintiffs simply asserted that "in order to *assist* the

25

Court in deciding [the privilege] issues if it is inclined to revisit them, Plaintiffs are prepared to provide - on an *in camera* basis - a further Declaration of counsel, to provide the Court with additional information regarding counsel's actions in the Fall of 2008." (ECF No. 199, at 10-11) (emphasis added).

There is no indication that the proffered *in camera* declaration would have adduced any additional information vital to the decision-making with respect to Defendants' motion to compel based on newly discovered evidence. Plaintiffs stated that they were prepared to submit an "in camera Declaration of counsel to *confirm* the basis of the privilege for the documents on the logs." (ECF No. 199, at 31). Plaintiffs suggest that the documents they intend to produce - or have already produced - in accordance with the July 24, 2013 Order will dispute Judge Schulze's factual finding that Plaintiffs did not anticipate litigation any earlier than December 8, 2008. Specifically, Plaintiffs argue that "documents that will be produced █████

████ ███ ███ ████ ██████ ██████ ██████ ██ ████ ███

████████████████████████████████████████████████████

██████ ████████████████████████████████████

██████████████████████████ (ECF No. 217, at 8-9 n.9). After reviewing the considerable record in this case, however, Judge Schulze determined that both the pre *and* post-September 18, 2008 communications related to claims handling, and was not prepared

26

in anticipation of litigation.  Specifically, she stated that "[t]he court has already ruled, three times, that Plaintiffs failed to show that they anticipated litigation before September 18, ECF Nos. 148, 170, 184, and reliance on activities occurring before that date is accordingly misplaced.  In any event, a decision to examine coverage is not the same as anticipating litigation."  (ECF No. 213, at 8).  She further found that Plaintiffs failed previously to raise post-September 18 communications – which they had in their possession - as evidencing an earlier anticipation of litigation, and that in any event, "[t]he post-September 18 communications all were written by, or in one case to, Mr. Zawitoski, ███████████████ ███████████████████████████████████████ (*Id.* at 9).[17]

Moreover, as Defendants correctly state, Plaintiffs did not argue, in the motion for leave to submit Paul Janaskie's declaration *in camera*, that the declaration would include *additional* documents showing an earlier "anticipation of litigation" date.  *See Maxwell v. South Bend Work Release*

---

[17]    Judge Schulze similarly found misplaced Plaintiffs' reliance on ██████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████ (*See* ECF No. 193-12; *see also* ECF No. 213, at 9). Judge Schulze also properly asserted that Defendants' anticipation of litigation is immaterial to when Plaintiffs anticipated litigation.

*Center*, No. 3:09-CV-008-PPS-CAN, 2010 WL 4318800, at *2 (N.D.Ind. Oct. 25, 2010) ("Arguments not raised before a magistrate judge and raised for the first time in the objections filed before the district judge are waived") (*citing United States v. Moore*, 375 F.3d 580, 584 n.2) (7th Cir. 2004)). Even if Plaintiffs made this argument before Judge Schulze, they have not established that the decision to defer ruling on Plaintiffs' motion was clearly erroneous or contrary to law. Consistent with Plaintiffs' own prior admission, it was not necessary for Judge Schulze to accept a proffered *in camera* declaration to issue her ruling, and Plaintiffs' motion for leave was only intended to facilitate the review of documents that Plaintiffs *already* submitted *in camera*. *See United States v. Family Practice Assocs. of San Diego*, 162 F.R.D. 624, 627 (S.D.Ca. 1995) ("Prior to an *in camera* review there must first be a sufficient evidentiary showing of a legitimate issue as to application of a privilege or other protection. *In camera* review should not replace effective adversarial testing of the claimed privileges and protection.").

Judge Schulze determined that the asserted privileges were not genuinely applicable based on her review of the affidavits, depositions, and documents produced – all of which led her to conclude that in-house and outside counsel performed traditional claims handling, rather than legal, functions before December 8,

2008, and thus communications prior to that date were not protected. Notably, Plaintiffs do not challenge Judge Schulze's factual determinations. *See In re Allen*, 106 F.3d 582, 601 (4th Cir. 1997) ("a district court's holding that the attorney-client privilege does not protect communications rest[s] essentially on determinations of fact"). As Judge Grimm observed in *Victor Stanley, Inc. v. Creative Pipe, Inc.*:

> [i]t should go without saying that the court should never be required to undertake *in camera* review unless the parties have first properly asserted privilege/protection, then provided sufficient factual information to justify the privilege/protection claimed for each document, and finally, met and conferred in a good faith effort to resolve any disputes without court intervention.

250 F.R.D. at 266.

Here, Plaintiffs made a strategic decision to continue taking an "all-in" approach with respect to asserting privilege and work product protection, but Judge Schulze concluded, based on a complete record and sufficient evidence, that Plaintiffs did not "sustain its burden to show that the disputed material was not prepared primarily for the ordinary business purpose of adjusting insurance claims. It goes without saying that if the evidence is later shown to have been misleading or inaccurate, it is no longer sufficient to sustain that burden" (ECF No. 213, at 6-7). *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (holding that the burden is on the proponent of the

29

privilege to demonstrate "not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived."). By failing to sustain their burden of showing that the pre-December 8, 2008 documents, submitted *in camera*, were privileged, it follows that Plaintiffs did not provide the basis for Judge Schulze to review an attorney declaration *in camera* – allegedly to explain or supplement the very documents that she already determined were *not* created in anticipation of litigation. Further, Plaintiffs argued that "Mr. Janaskie's *In Camera* Declaration would present confidential privileged and protected information that Travelers has authorized him to disclose *only* to the Court to support Travelers' claims of attorney-client privilege and work product protections with respect to the *in camera* documents challenged by Defendants." (ECF No. 202, at 2). Despite this broad assertion that the declaration would include privileged information that Travelers did not wish to disclose to Defendants, Plaintiffs have not demonstrated that the *in camera* declaration itself would be privileged or protected. *See Prowess*, No. WDQ-11-1357, 2013 WL 1856348, at *15 (denying a motion to submit a document for *in camera* review where the plaintiff failed to provide the basis for asserting that the document itself was privileged or protected).

Even in cases where courts have allowed *in camera* affidavits, they recognized the district court's discretion in allowing such submissions. *See Pack v. Beyer*, 157 F.R.D. 226, 229 (D.N.J. 1994) ("[i]n both the ordinary and the exceptional case, *in camera* affidavits and submissions are authorized and the district court *may* resort to them in arriving at its ultimate determination. In both instances, the district court must have furnished to it, in whatever form, public or private, all of the detailed justification advanced by the government for non-disclosure." (*citing Lame v. United States Dept. of Justice*, 654 F.2d 917, 922 (3rd Cir. 1981)) (emphasis added)). Notably, in *Pack v. Beyer*, the court observed that "normally the submission of appropriate affidavits would be sufficient, but the Court found it necessary to augment the affidavits with an *in camera*, *ex parte* review of the disputed information." 157 F.R.D. at 227 n.1. Here, Judge Schulze did not find it necessary to consider Plaintiffs' proffered *in camera* declaration of its outside counsel that Plaintiffs purported would further explain activities undertaken by counsel in the Fall of 2008, relying on a developed and sufficient factual record to determine whether to grant Defendants' motion to compel. *See United States v. Zolin*, 491 U.S. 554, 571-72 (1989) ("[W]e cannot ignore the burdens *in camera* review places upon the district courts, which may well be required to evaluate

31

large evidentiary records without open adversarial guidance by the parties. Before engaging in *in camera* review . . . 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person' . . . that *in camera* review of the materials may reveal evidence to establish the claim [of privilege/protection]".) (internal citations omitted)); *Caruso v. Coleman Co.*, No. 93-CV-6733, 1995 WL 384602, at *1 (E.D.Pa. 1995) ("[R]esort to *in camera* review is appropriate only *after* the burdened party has submitted detailed affidavits and other evidence to the extent possible."); *Weber v. Paduano*, No. 02 Civ. 3392, 2003 WL 161340, at *14 (S.D.N.Y. Jan. 22, 2003) (holding *in camera* review should not be undertaken routinely, but only after the party asserting privilege has submitted an adequate record to support the claim).

A review of the record demonstrates that Judge Schulze's July 24, 2013 Order was neither clearly erroneous nor contrary to law and she acted well within her discretion in deferring examination of a proffered *in camera* declaration from Plaintiffs' outside counsel. Accordingly, Plaintiffs' objection will be overruled.

### B.   Motion to Seal

A motion to seal must comply with Local Rule 105.11, which provides:

> Any motion seeking the sealing of pleadings,
> motions, exhibits or other papers to be
> filed in the Court record shall include (a)
> proposed reasons supported by specific
> factual representations to justify the
> sealing and (b) an explanation why
> alternatives to sealing would not provide
> sufficient protections. The Court will not
> rule upon the motion until at least fourteen
> (14) days after it is entered on the public
> docket to permit the filing of objections by
> interested parties. Materials that are the
> subject of the motion shall remain
> temporarily sealed pending a ruling by the
> Court. If the motion is denied, the party
> making the filing will be given an
> opportunity to withdraw the materials.

Local Rule 105.11 (D.Md. 2011). This rule endeavors to protect the common law right to inspect and copy judicial records and documents, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), while recognizing that competing interests sometimes outweigh the public's right of access, *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

Before sealing any documents, the court must provide the non-moving party with notice of the request to seal and an opportunity to object. *Id.* This notice requirement may be satisfied by either notifying the persons present in the courtroom or by docketing the motion "reasonably in advance of deciding the issue." *Id.* at 234. Finally, the court should consider less drastic alternatives to sealing, such as filing redacted versions of the documents. If the court decides that

33

sealing is appropriate, it should also provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives. *Id.* at 235.

On August 29, 2013, Defendants filed an unopposed motion to seal filings in connection with Defendants' response to Plaintiffs' objections to Judge Schulze's July 24, 2013 Order. (ECF No. 226). As noted above, Defendants filed an opposition to Plaintiffs' objections, including a number of exhibits, on August 29, 2013. (ECF No. 225). Defendants point to the court-approved Stipulated Protective Order (ECF Nos. 112 & 113) and emphasize that all of the exhibits filed with the opposition "constitute documents or deposition testimony that are 'confidential' pursuant to the Stipulated Protective Order." (ECF No. 226 ¶ 5). Defendants further argue that "[b]ecause the [opposition] is replete with references to and discussions of documents and deposition testimony that the parties have designated 'confidential' pursuant to the Stipulated Protective Order, Defendants filed unredacted copies of the [opposition] under seal." (*Id.* ¶ 6). Defendants thus request that its opposition and accompanying exhibits be sealed to "give force to the Stipulated Protective Order, and thereby to protect from disclosure the parties' confidential information." (*Id.* ¶ 8). The motion to seal will be granted for the reasons asserted. Defendants have already redacted the appropriate material in the

copy that was electronically filed (ECF No. 223) and have filed both complete and redacted versions with the Clerk's office.

Furthermore, as before, the undersigned will not endeavor to determine what portions (if any) of this Memorandum Opinion contain information that is under seal. Rather, the Memorandum Opinion will be filed under seal, and the parties are directed to review it and suggest jointly any necessary redactions that should be made before it is released to the public docket.

**IV. Conclusion**

For the foregoing reasons, Plaintiffs' objection will be overruled. Defendants' motion to seal will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge