IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| CHARTER OAK FIRE INSURANCE COMPANY, et al. | : |
| v. | : Civil Action No. DKC 09-0100 |
| | : |
| AMERICAN CAPITAL, LTD., et al. | : |
| | : |

## MEMORANDUM OPINION

Presently pending and ready for resolution in this insurance case is a motion for sanctions (ECF No. 330) filed by Defendants and Counterclaimants American Capital, Ltd., Scientific Protein Laboratories LLC ("SPL"), and Spectator Management Group ("SMG"). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion for sanctions will be denied.

## I.  Background

Some familiarity with the underlying facts of this case is presumed. (*See* ECF Nos. 42, 64, 77, 92, 170, 184, 267). In brief, this case concerns an insurance coverage dispute between two insurance companies, Plaintiffs Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America (together, "Travelers" or "Plaintiffs"), and an investment fund, Defendant American Capital, Ltd. ("American Capital").

Beginning in 2008, Defendants American Capital and SPL became involved in more than 100 lawsuits pertaining to the allegedly defective drug heparin.   Many of the complaints in these lawsuits allege that SPL is a subsidiary of American Capital.   A dispute subsequently arose about whether the underlying heparin lawsuits implicate certain primary and umbrella insurance policies that Plaintiffs issued to American Capital for the years 2006 through 2009 ("the Policies").   Travelers filed the instant declaratory judgment action seeking rescission or reformation of the Policies, or, alternatively, a declaration that Travelers does not owe defense or indemnity coverage to either American Capital or any of its alleged subsidiaries for the underlying heparin lawsuits.

The parties commenced discovery on January 20, 2012 and the case was referred to Magistrate Judge Schulze for resolution of all discovery disputes on November 27, 2012.   (ECF No. 145).   Soon thereafter, discovery problems began to arise, primarily surrounding Plaintiffs' rescission claim.   The rescission claim is grounded on alleged misrepresentations and omissions made by American Capital that it did not have subsidiaries and that it was not seeking coverage for other entities.

Under Maryland law, Travelers ultimately bears the burden of establishing promptness as an essential element of its rescission claim.   *Finch v. Hughes Aircraft Co.*, 57 Md.App. 190,

244 (1984) ("A plaintiff seeking rescission must demonstrate
that he acted promptly after discovery on the ground for
rescission."). Plaintiffs filed this action on January 16,
2009, and initially took the position that documents created on
or after September 2, 2008 were created in anticipation of
litigation and thus were protected. On November 20, 2012,
Defendants moved to compel production of claims handling
materials. On December 21, 2012, Judge Schulze granted
Defendants' motion and ordered production of *all* withheld
documents created after September 18, 2008, with redactions only
for attorney impressions and opinions. Numerous objections to
Judge Schulze's ruling followed from Plaintiffs.

Central to Defendants' motion for sanctions is Plaintiffs'
compliance with the memorandum opinion and order issued on
February 11, 2013, overruling Plaintiffs' objections in part and
sustaining them in part. (ECF Nos. 170 & 171). Specifically,
Judge Schulze's ruling was limited to the waiver of privilege
for the documents related to Plaintiffs' rescission claim that
were created after September 18, 2008: "what is relevant to the
issue of promptness is limited to the timing of Plaintiffs'
investigation into, and conclusions about, the facts that
American Capital allegedly misrepresented in its insurance
applications." (ECF No. 170, at 25). Consequently, Plaintiffs
were ordered to produce all documents, or portions thereof,

indicating - as a factual matter - when Travelers began to investigate whether, or reached a conclusion that, *inter alia*, American Capital had subsidiaries. (ECF No. 170). The order outlined eight areas of factual information to which it applied, but allowed attorney impressions and legal opinions to be redacted from such documents: (1) American Capital had subsidiaries; (2) American Capital acquired SPL in 2006; (3) American Capital acquired SMG in June 2007; (4) American Capital had been named as a defendant in a heparin lawsuit prior to submitting its 2008 renewal application to Travelers; (5) the suspected tainted heparin and heparin's active pharmaceutical ingredient had been recalled in early 2008; (6) the allegedly tainted heparin ingredients had been processed in China; (7) SPL participated in a joint venture that processed heparin sodium API in China; and (8) the heparin lawsuits predating American Capital's 2008 renewal application sought damages in excess of $10,000. (ECF No. 170, at 25). The memorandum opinion noted that "it is irrelevant whether such factual information is contained in documents that were created by Travelers' non-attorney claims employees, in-house counsel, or outside coverage attorneys." (*Id.* at 26). It was further held that "[i]f Plaintiffs contend that any documents should be withheld in their entirety because they contain no factual information relevant to the issue of promptness, such documents must be

submitted to Judge Schulze for *in camera* review." (*Id.*). Plaintiffs were instructed to comply with the February 11, 2013 production order by March 1, 2013. (ECF Nos. 170 & 171).

Plaintiffs subsequently produced 4,900 pages of previously withheld documents and submitted to Judge Schulze for *in camera* review documents that they believed were privileged. Plaintiffs' *in camera* submission amounted to a "document dump" on the court, lacking an index or any meaningful organization. Judge Schulze ordered resubmission, and on April 12, 2013, Plaintiffs resubmitted the withheld documents for *in camera* review, along with a certification from James E. Rocap III, one of Plaintiffs' attorneys from Steptoe & Johnson, **REDACTED**

**REDACTED**

(ECF No. 193-9 ¶ 8).

# REDACTED

REDACTED (ECF No. 193, at 6). On July 24, 2013, Judge Schulze granted Defendants' motion to compel, ordering Plaintiffs to produce all claims handling documents created before December 8,

2008.  (ECF Nos. 213 & 214).[1]  In ordering this production, Judge Schulze deferred *in camera* review of post-December 7, 2008 documents, and gave Defendants leave to "supplement their previously submitted objections to Plaintiffs' privilege logs" after reviewing the pre-December 8, 2008 documents.  (ECF No. 213, at 11).

On December 2, 2013, Defendants once again moved to compel, this time seeking claims-handling documents post-dating December 8, 2008 on the basis that Plaintiffs did not anticipate denying coverage as of that date.  (ECF No. 264).  During the pendency of this motion, Plaintiffs produced a group of post-December 7, 2008 documents (which Plaintiffs believe were privileged), or portions thereof, on January 21 and 24, 2014.  (ECF No. 332, at 22).  Plaintiffs state that the documents were produced as part of a compromise production under a non-waiver agreement. Plaintiffs seem to be referring to an email exchange in which defense counsel represented: "[y]our goal, which I appreciate and would intend to honor, is that the supplemental production will not be deemed a voluntary act that would, without more, implicate possible subject matter waivers."  (ECF No. 343-39, at 3).  Plaintiffs represent that Defendants agreed not to seek

---

[1]  Plaintiffs objected to Judge Schulze's July 24, 2013 ruling, which was overruled.  (*See* ECF No. 267).

sanctions when Travelers conceded to this non-waiver production. (ECF No. 343, at 22).

The January 2014 compromise production, however, actually prompted Defendants to file an amended motion to compel on February 10, 2014. (ECF Nos. 280 & 281).[2] The amended motion to compel was fully briefed and Judge Schulze issued a letter order setting a hearing on April 10, 2014 to resolve Defendants' newest motion to compel. (ECF No. 306). Judge Schulze issued another letter order on March 28, 2014, clarifying that the issue for resolution at the hearing was whether any documents which Plaintiffs withheld – but which Defendants now have – "was, when submitted for in camera review on April 12, 2013, properly identified and described on the [April 12, 2013] privilege logs and properly certified to contain no information that was subject to Chief Judge Chasanow's disclosure order." (ECF No. 315, at 2). Plaintiffs subsequently agreed to produce *all* pre-suit documents in dispute to Defendants by April 15, 2014, and Judge Schulze approved the stipulated order. (ECF Nos. 323 & 325).

---

[2] Defendants also argued in their motion to compel that the crime-fraud exception required production of all pre-suit documents in this case. Defendants' two motions to compel filed in December 2013 and February 2014 were withdrawn with prejudice after Plaintiffs produced remaining documents, thus the merits of Defendants' argument regarding the crime-fraud exception was never reached.

# REDACTED

**REDACTED**        Plaintiffs agreed "that there were 302 documents that were left off the CD – 245 of which Travelers had *never logged*." (*Id.* at 25) (emphasis in original). Plaintiffs produced these additional documents on April 18, 2014. Defendants then "pressed further," and Plaintiffs produced an additional fifty documents on April 24, 2014. Defendants maintain that "Travelers' 2014 production of logged and unlogged pre-suit documents included dozens of documents that fell within the 'subsidiaries' investigation category of Judge Chasanow's order." (Id. at 25-26).

Defendants moved for sanctions on May 5, 2014, seeking dismissal of Plaintiffs' claims, a default judgment on Defendants' counterclaims, and attorneys' fees. (ECF Nos. 331 & 332). Plaintiffs opposed this motion on June 10, 2014 (ECF No. 343), and Defendants replied on August 12, 2014 (ECF No. 372).

## II. Analysis

### A.   Defendants' Motion for Sanctions

Defendants move for sanctions pursuant to Fed.R.Civ.P. 37(b)(2)(A). That rule permits a district court to impose certain punitive measures, up to and including dismissal, on any party who disobeys a discovery order. Fed.R.Civ.P. 37(b)(2)(A). "Rule 37(b)(2) gives the court [] broad discretion to make whatever disposition is just in [] light of the facts of the particular case." 8B Charles Alan Wright, et al., *Federal Prac. & Proc.* § 2289 (3$^d$ ed. 2010); *see also Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 518 (D.Md. 2000) ("Federal district courts possess great discretion to sanction parties for failure to obey discovery orders."). Emphasizing this broad discretion, Defendants ask that "the most severe in the spectrum of sanctions" be imposed: dismissal of Plaintiffs' complaint and default judgment on Defendants' counterclaims. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). But "[w]hile the imposition of sanctions under Rule 37(b) lies within the trial court's discretion, it is not a discretion

9

without bounds or limits." *Hathcock v. Navistar Int'l Transp.
Corp.*, 53 F.3d 36, 40 (4th Cir. 1995) (quotation marks and
brackets omitted).   This is particularly so when a party
requests the rather draconian penalty of dismissal or default
judgment.   *Id.*   Thus, in determining what sanction to impose
under Rule 37(b)(2), the court is guided by consideration of
four factors: "(1) whether the non-complying party acted in bad
faith, (2) the amount of prejudice that noncompliance caused the
adversary, (3) the need for deterrence of the particular sort of
non-compliance, and (4) whether less drastic sanctions would
have been effective." *S. States Rack and Fixture, Inc., v.
Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

Although much of Defendants' briefing is devoted to
purported inconsistencies in Plaintiffs' litigation strategies
concerning whether or when Travelers knew that American Capital
had subsidiaries – and whether SPL and SMG were in fact
subsidiaries – the threshold question for the sanctions motion
pursuant to Rule 37 is whether Plaintiffs in fact violated a
discovery order.[3]   Defendants argue that Plaintiffs violated the

---

[3]   Plaintiffs indicate that their decision to withhold
documents that they submitted for *in camera* review to Judge
Schulze in April 2013 was based on their understanding of the
parameters of the February 11, 2013 order and *not* on whether a
statement would be consistent or inconsistent with Travelers'
litigation strategy.  (ECF No. 343-3 ¶ 19).

February 11, 2013 order.[4]   As stated earlier, the February 11,
2013 order specified that "what is relevant to the issue of
promptness [regarding Plaintiffs' rescission claim] is limited
to the timing of Plaintiffs' investigation into, and conclusions
about, the facts that American Capital allegedly misrepresented
in its insurance applications."  (ECF No. 170, at 25).  Thus,
Plaintiffs were ordered to produce, *inter alia*, all documents
(or portions thereof) indicating – as a factual matter – when
Travelers began to investigate whether, or reached a conclusion
that American Capital had subsidiaries.

    Defendants argue that many of the documents that Plaintiffs
produced in January and April 2014 "fell within the
'subsidiaries'-investigation category of [the February 11, 2013]
order."  (ECF No. 332, at 23).[5]   Defendants identify redacted

_____

    [4] As Plaintiffs point out, any attempt by Defendants to rely
on arguments and documents included in their February 10, 2014
amended motion to compel (ECF Nos. 280 & 281) is improper and
documents associated with that submission will not be
considered.  (*See* ECF Nos. 264, 265, 303, 304, 310, and 311).
Judge Schulze approved a stipulated order by which Plaintiffs
agreed to produce post-December 8, 2008 claims handling
documents and Defendants withdrew *with* prejudice their motion to
compel and all supporting materials.  (ECF No. 325, at 1).
Plaintiffs similarly agreed to withdraw their opposition and
motion to strike the declaration of defense counsel, John W.
Schryber.  (ECF Nos. 296, 297, 298, 299, 301, 317, 318).
Accordingly, none of the documents which both parties agreed to
withdraw are proper sources of references in the motion for
sanctions and opposition.

    [5] Defendants also assert that Plaintiffs generally have
exemplified bad faith by engaging in a long pattern of discovery

content in twenty-two (22) documents as information that should
have been produced by March 1, 2013 per the February 11, 2013
order. (ECF No. 332, at 26). Defendants take the position that
"[a] document in which a Travelers employee or agent refers to
SPL or any other entity as a 'subsidiary' of American Capital is
plainly a document" that falls within the parameters of the
February 2013 order and should have been produced by March 1,
2013. (ECF No. 332, at 34). Plaintiffs essentially make two
arguments in response. First, they assert that they did not
violate any discovery order because their production of
documents from the post-December 8, 2008 time frame was a

---

abuse. Defendants contend that Travelers regularly withheld
claims handling documents under the guise of privilege and
misled the court regarding when Plaintiffs anticipated
litigation. For instance, Plaintiffs initially took the
position that documents created on or after September 2, 2008
were created in anticipation of litigation and thus were
protected; subsequent depositions of Travelers personnel (*i.e.*,
Edward Zawitowski and Tracy Seitz), however, indicated that
Travelers did not anticipate litigation until December 8, 2008.
This lack of forthrightness prompted motions to compel from
Defendants and resulted in Judge Schulze determining that
documents created prior to December 8, 2008 were *not* protected
and had to be produced. Consequently, Defendants point to
language in a prior order issued by Judge Schulze indicating
that "Plaintiffs have unduly, and egregiously, delayed discovery
with misleading evidence and arguments and a document dump, such
that a production order was already justified." (ECF No. 315,
at 2).

Defendants' motion for sanctions, however, is largely
premised on Plaintiffs' purported violation of the February 2013
order by failing to produce documents – by March 1, 2013 –
responsive to the eight categories identified in that order, as
opposed to Plaintiffs' discovery practices generally throughout
the course of this case.

12

"compromise production," designed to "move past the discovery phase in this case." (ECF No. 343, at 25).  Thus, Plaintiffs seem to be arguing that because there was no order compelling production of documents created after December 8, 2008, there was no discovery violation.  Alternatively, Plaintiffs believe that substantial justification existed for withholding the documents because they were privileged.  Plaintiffs assert that "[i]n each instance cited by Defendants as noncompliant, we concluded in good faith and using our best judgment that the redacted statements fell within the February 11, 2013 Order's exception for attorney impressions or opinions or was otherwise nonresponsive to the Order." (ECF No. 343-3 ¶ 19).

First, the fact that Plaintiffs' January and April 2014 document production was pursuant to a compromise does not – in and of itself - absolve them from sanctions if the documents produced should have been disclosed earlier in accordance with the February 11, 2013 order (which is what Defendants contend).  After reviewing the redacted portions of the twenty-two (22) documents that Plaintiffs produced in January and April 2014, it appears that Travelers has not *completely* complied with the court's order.  Although Plaintiffs are correct to point out that the February 11, 2013 order allowed redactions of portions of documents containing attorney impressions and legal opinions, the opinion also notified Plaintiffs that "it is irrelevant

13

whether [] factual information is contained in documents that were created by Travelers' non-attorney claims employees, in-house counsel, or outside coverage attorneys." (ECF No. 170, at 26).  For instance, Defendants point to the following redacted portion of a

REDACTED

REDACTED


REDACTED


(ECF No. 332, at 26) (emphasis added).  Similarly, the following bolded section of a

REDACTED

# REDACTED

REDACTED                              (*Id.*).  These redacted portions from the December 9 and 12, 2009 memoranda are responsive to the documents that Plaintiffs were ordered to produce in the February 11, 2013 order indicating when Travelers began to investigate or concluded that American Capital had subsidiaries.

Similarly, Plaintiffs also redacted in their original production some of the handwritten notes of Ms. Seitz,

Travelers' in-house counsel, from a January 14, 2009 teleconference with other Travelers personnel and Steptoe & Johnson.       **REDACTED**


(*Id.* at 30).  Plaintiffs maintain that "[t]he entire document reflects attorney impressions and thus is exempt from disclosure.  Even the text bolded by Defendants as subject to production *is a question, not a statement of fact*."  (ECF No. 343, at 43) (emphasis in original).  They also redacted ^REDACTED

**REDACTED**


(ECF No. 332, at 30).  Plaintiffs similarly argue that these are questions being posed "by Steptoe's outside counsel to his co-counsel on January 15, 2009, the day before the filing of the original complaint, when Mr. Warin was undertaking one of his final analyses of the draft complaint.  As such, they are clearly attorney impressions and thus exempt from disclosure."  (ECF No. 343, at 43).  Plaintiffs are mistaken.  The redacted portions of these documents are responsive to the February 11, 2013 order as they relate to Travelers' investigation regarding whether American Capital had subsidiaries; the fact that they are framed as questions further reflects that Travelers was investigating this very issue.  Moreover, although the redacted portions of the January 14 and

15

15, 2009 documents are statements by attorneys, they relate to investigation of facts, not attorney impressions or legal opinions.

Still, Defendants go too far in accusing Travelers of *flagrant* violations of the February 11, 2013 order. Importantly, this is not an instance where the responding party has entirely refused to respond to discovery. *Cf. Chu v. Great Northern Ins. Co.*, No. 10-cv-1422-RWT, 2013 WL 4541606, at *4 (D.Md. Aug. 26, 2013) ("[e]ven with the threat of sanctions for noncompliance clearly spelled out by Judge Schulze in her discovery Order, the Plaintiffs still refused to engage in discovery."); *Woodard-Charity v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, No. PWG-11-3555, 2013 WL 3863935, at *3 (D.Md. July 23, 2013) ("[p]laintiff failed to respond to [d]efendant's discovery requests or to justify her failure to respond, even after the Court ordered her to respond by a set date.").

Indeed, not every discovery dispute evidences misconduct. *Big Dipper Entm't, LLC v. City of Warren*, 641 F.3d 715, 719 (6th Cir. 2011) ("[t]hat two persons disagree does not mean that one of them has bad motives."). For instance, Defendants complain that "the most glaring example of Travelers' withholding of portions of documents which Judge Chasanow required Travelers to produce – the portion of the **REDACTED**

16

**REDACTED** . . . also violated this Court's April 11 order." (ECF No. 332, at 35). Defendants refer to two drafts of the coverage letter, dated January 11 and 12, 2009, that Travelers sent to Defendants on the same day that it filed the initial complaint.

# REDACTED

(ECF No. 332, at 35) (emphasis in original).   **REDACTED**

# REDACTED

**REDACTED**

(ECF No. 343-3 ¶ 23).

It is not clear that the January 11 and 12, 2009 draft coverage letters effectively identified SPL as a subsidiary and that the redacted portion of these drafts would be responsive to the February 11, 2013 order. Moreover, Plaintiffs' argument that these drafts consisted of attorney impressions and legal opinions in preparation for the final coverage letter is persuasive. *See, e.g., McKinley v. FDIC*, 744 F.Supp.2d 128, 141-42 (D.D.C. 2010) (finding that a draft affidavit was subject to work product protection). The same logic counsels against production of draft complaints.[6] *See, e.g., Gucci America, Inc.*

---

[6] Moreover, as

**REDACTED**

The asse
lure to produce the draft complaints was made in bad faith lacks merit, considering that Plaintiffs disclosed their position on the subject to Defendants and in the certification accompanying the *in camera* review submission to Judge Schulze.

Similarly, Plaintiffs' counsel represented in the March 1, 2013 letter to Judge Schulze (on which Defendants' counsel was copied) that "Plaintiffs have not included in this *in camera* submission any documents created on or after January 16, 2009 – the date on which Plaintiffs filed their Complaint in this action" because these documents were created on or after the date Plaintiffs asserted the rescission claim. (ECF No. 343-3). Plaintiffs indicated that "[s]hould the Court nevertheless

18

*v. Guess?, Inc.*, 271 F.R.D. 58, 78 (S.D.N.Y. 2010) ("[t]he draft complaints, presumably drafted by GG and Gucci's outside attorneys, are privileged from disclosure.").

Although it appears that Plaintiffs should not have redacted portions of *some* of the twenty-two (22) documents Defendants identify, it is unclear whether Plaintiffs withheld the redacted portions in bad faith. *See Harden v. Siegelbaum*, Civil Action No. AW-09-3166, 2011 WL 1322521, at *2 (D.Md. Apr. 1, 2011) ("the record does not plainly reveal that counsel for the [p]laintiff intentionally avoided answering [d]efendants' discovery requests or withheld evidence."). Plaintiffs maintain that they have endeavored to comply with their understanding of the February 11, 2013 order and redacted what they believed to be attorney impressions or legal opinions. *Mutual Fed. Sav. and Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) ("only the most flagrant case, where the party's

---

require the submission of such documents, Plaintiffs are prepared to submit them promptly for the Court's *in camera* review." The record does not suggest that Plaintiffs were ever ordered to produce documents from January 16, 2009. Indeed, Judge Schulze rejected Defendants' argument that Plaintiffs wrongfully withheld documents from January 16, 2009, the date the complaint was filed. (ECF No. 374, at 18, Tr. of telephonic hearing with Judge Schulze ("Mr. Rocap's March correspondence to you made it very clear that they weren't including anything that was created after the 15th.")).

Accordingly, any assertion that Plaintiffs improperly – and in bad faith - withheld documents from January 16, 2009 in violation of the February 11, 2013 order is unavailing.

noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, will result in the extreme sanction of dismissal or judgment by default."). This factor counsels against imposing a sanction as harsh as dismissal.[7]

Bad faith is only one factor to consider regarding sanctions for failure to comply with a court order. The second factor is the prejudice caused to Defendants, which requires consideration of whether the evidence withheld is material. *Mutual Fed. Sav. and Loan*, 872 F.2d at 93. Defendants assert that they suffered prejudice in the form of added expenses and delay. Defendants contend that "if Travelers had made its 2014

---

[7]

**REDACTED**

'Connor, submitted a declaration indicating that the April 2014 production "omitted a small number of additional documents that were missed during Travelers' collection of documents in response to the Parties' agreement. These documents all were produced to Defendants by April 24, 2014." (ECF No. 343-1 ¶ 12). He characterized the omissions as "entirely inadvertent" and having been "rectified within days of being identified." (*Id.*).

There is clearly a difference of opinion between the parties regarding whether the omissions were inadvertent, but there is no indication that Plaintiffs' failure to submit these documents by April 15, 2014 - instead, submitting them later that month – was done in bad faith or prejudiced Defendants.

productions upfront, countless depositions and discovery disputes would have been avoided" and the futility of Plaintiffs' rescission claim would have become apparent. (ECF No. 332, at 38). Furthermore, according to Defendants, "[e]very day that Travelers has delayed the resolution of this case is another day of non-vindicated reputational injury to American Capital" considering that Plaintiffs have asserted an intentional misrepresentation claim against American Capital. (*Id.* at 40). Plaintiffs respond that a delay in producing material discovery does not by itself constitute prejudice and that, in any event, Defendants have by now obtained all of Travelers' documents. (ECF No. 343, at 33).

Indefinite delay, disruption of deadlines, and the continuation of discovery can amount to prejudice. *See Goodman v. Praxair Servs., Inc.*, 632 F.Supp.2d 494, 508 n.6 (D.Md. 2009) (listing cases). There has been some delay in this case, considering that Plaintiffs initially maintained that they did not anticipate litigation until September 2008, and Judge Schulze later determined in July 2013 – after Defendants moved to compel – that the appropriate date was actually December 8, 2008. This led to additional discovery, which in turn prompted more motion practice from Defendants in an effort to obtain responsive documents. The lack of complete disclosure did not, however, prevent Defendants from preparing a defense altogether.

21

*Cf. Woodard-Charity*, 2013 WL 3863935, at *4 ("The evidence sought by [d]efendant's initial discovery request goes to the heart of [p]laintiff's claim and it cannot be disputed that [p]laintiff's failure to answer even a single interrogatory precludes [d]efendant from preparing a defense.").   Moreover, Plaintiffs are not the only party to blame for the delay in summary judgment briefings and a "tremendous tax on Defendants' resources," (ECF No. 372, at 18), considering that Defendants have continued to this day to demand documentation from Plaintiffs (with each dispute requiring the court's involvement), some of which demands Judge Schulze characterized as "overkill." (ECF No. 374, at 20, Tr. of telephone conference with Judge Schulze ("Mr. Schryber, you have gotten privileged documents that you would have not been otherwise entitled to in this case as part of these compromises.   And this is just overkill. [] I have looked at this complaint, it's got five counts in it.   Only one of them relates to rescission.")).

Defendants also believe that the need to deter discovery abuses of this kind militates in favor of dismissing the action. Defendants assert that Plaintiffs' counsel made false certifications regarding whether all documents in dispute were either produced or included in the privilege log, "even though at least 245 documents in dispute had never been logged and Defendants' discovery of their existence was only via

22

Defendants' counsel's vetting of the April 15 production." (ECF No. 332, at 37).   Defendants also argue that Plaintiffs intentionally waited to produce documents until January and April 2014 to preclude Defendants from adding counterclaims for bad faith and fraud.   Plaintiffs counter that the certifications were accurate at the time made and they "have fully complied with all discovery orders and resolved ongoing disputes by compromise." (ECF No. 343, at 35).   Plaintiffs may be giving themselves more credit than they deserve considering the fact that, from the inception of this case, Plaintiffs made a strategic decision to take – and continued to take throughout discovery - an "all-in" approach with respect to asserting privilege and work product protection.   There is a need to deter the type of gamesmanship that seems to be happening in this case.   Discovery is meant to take the game playing *out* of the trial process, not simply add another opportunity to engage in obfuscation and evasion.   *Bethesda Softworks LLC v. Interplay Entertainment Corp.*, Civil Action No. DKC 09-2537, 2011 WL 1559308, at *5 (D.Md. Apr. 25, 2011); *Newsome v. Penske Truck Leasing Corp.*, 437 F.Supp.2d 431, 437 (D.Md. 2006) (explaining discovery was designed to make trial "less of a game of blind man's bluff and more of a fair contest") (quotation marks omitted).

The last factor, the effectiveness of less drastic sanctions, counsels against the imposition of the heavy sanction of dismissal of Plaintiffs' complaint and default judgment on the counterclaims. Defendants believe that less drastic sanctions will not be effective because Plaintiffs anticipated having to pay legal fees all along:

> [T]he specter of a fee award has subsisted in this case from the day it was filed because Maryland common law holds that an insurer who loses a lawsuit seeking an adjudication that it did not owe a duty to defend must pay the reasonable legal fees of the policyholder incurred prior to the adjudication that the underlying suit did, in fact, create the possibility of a covered judgment. *Nolt v. U.S. Fidelity and Guaranty Co.*, 329 Md. 52, 66-67 (1993). Because Travelers privately admitted before it filed this suit that the heparin and non-heparin suits created the possibility of a covered judgment, *Travelers came into this litigation expecting to lose the "duty to defend" issue and, ergo, expecting to pay all reasonable legal fees incurred by Defendants.*

(ECF No. 332, at 41) (emphasis added). The fact that having to pay fees to Defendants was a possibility for Plaintiffs from the outset of this litigation does not necessarily justify imposing the harshest sanctions in this case. Defendants also contend that Plaintiffs' prior representations to the court that it did not believe American Capital had subsidiaries are betrayed by the documents withheld until January and April 2014 and that Plaintiffs have continued to use their lawyers to "game the

24

system." Specifically, Defendants assert that Travelers initially tried to "cloak[] a pure business function (claims handling) in privilege by delegating it to attorneys" and now seek "to avoid the consequences of statements made in that claims handling process by arguing they were made by outside attorney claims handlers rather than by an employee claims handler." (*Id.* at 44). Defendants emphasize "the need for a severe sanction that will actually deter Travelers from engaging in this type of conduct in the future." (*Id.*). Plaintiffs take the position that there has been no improper conduct on their part requiring deterrence, and that all along they were simply protecting what they perceived to be attorney work product.

Although Plaintiffs' "all-in" approach was a far cry from efficient litigation and contributed to protracted discovery, it does not rise to the level of egregiousness requiring outright dismissal, considering that they produced some documents and ultimately reached a compromise with Defendants (which, ironically, prompted this motion for sanctions). Moreover, "the Fourth Circuit has . . . emphasized the importance of warning a party prior to dismissing [or defaulting] its claim as a discovery sanction." *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 518 (D.Md. 2000); *Steigerwald v. Bradley*, 229 F.Supp.2d 445, 449 (D.Md. 2002) ("[T]he Fourth Circuit has encouraged trial courts initially to consider imposing sanctions

25

less severe than default, such as awards of costs and attorneys'
fees."); *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 n.2
(4th Cir. 1987) (noting that warning to parties was a "salient
fact" that distinguished cases in which default judgment was
appropriate sanction for discovery abuse under Rule 37).
Defendants have not pointed to any prior ruling in this case
explicitly invoking the possibility of default and dismissal as
a sanction for continuing non-compliance.  In their reply
memorandum, Defendants state that *they* "twice specifically
warned Travelers that sanctions could include a dismissal of
Travelers' claim."  (ECF No. 372, at 22).  But a warning from
*Defendants* that they may seek the severest form of sanctions is
*not* the same as a warning from the court that such a sanction
may be issued for continued noncompliance.[8]

Defendants remind the undersigned in their papers – over
and over again – that the record reflects prior admonishments of
Plaintiffs' "all in" discovery tactic.  To the extent the record

_____

[8] Defendants cite *Jenerette v. Montgomery Cnty. Gov't*, DKC
09-1777, 2010 WL 2817039, at *3 (D.Md. July 16, 2010), as
"suggest[ing] that a warning by the opposing party can be a
sufficient warning."  (ECF No. 372, at 24).  Defendants misread
the case.  Indeed, defendant's attempt to seek dismissal of the
case as a sanction was denied precisely because "[p]laintiff
received no explicit warning that he faced dismissal if he did
not respond to [d]efendant's discovery requests before the
deadline." *Jenerette*, 2012 WL 2817039, at *3.  The opinion also
noted that defendant did not previously mention sanctions and
"never requested a court order to compel [p]laintiff's
response."

reflects criticism of some of Plaintiffs' litigation practices, including Judge Schulze's admonishment of Plaintiffs' prior "document dump," such criticism does not constitute a "clear warning" that the court may impose the severest form of sanctions – dismissal and default judgment - on Plaintiffs.  In the reply memorandum, Defendants also point to Judge Schulze's warning in her letter order, dated March 28, 2014, that if she found that "any document was improperly submitted for *in camera* review, [she] will order production of all remaining documents." (ECF No. 315, at 2).  Again, requiring production of all remaining documents is not the same as clearly warning that the court may dismiss the case as a sanction for continued noncompliance.  Although Plaintiffs' discovery tactics are not commendable, given the lack of any clear notice in a prior ruling to Plaintiffs that such severe sanctions were a possibility if their behavior continued, these powerful tools are not appropriately invoked.

Defendants argue that, at a minimum, Plaintiffs should be required to pay reasonable legal fees in connection with Defendants' motions to compel the claims-handling documents, which were not produced until April 2014.  Rule 37 permits a court to award reasonable attorney's fees and expenses when a party has failed to comply with a court order.  *See* Fed.R.Civ.P. 37(b)(2)(C).  Rule 37 provides for two exceptions where an award

of fees is not mandatory: (1) if "the failure was substantially justified" or (2) if "other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(b)(2)(C). A party satisfies the "substantially justified" standard "if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think [that the failure to produce discovery is] correct, that is, if it has a reasonable basis in law and fact.'" *Decision Insights, Inc. v. Sentia Grp., Inc.*, 311 F.App'x 586, 599 (4th Cir. 2009) (*quoting Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "Courts have concluded that 'substantial justification' could include making meritorious objections to requested discovery, or even engaging in a legitimate dispute over the sequence of discovery." *Kemp v. Harris*, 263 F.R.D. 293, 296-97 (D.Md. 2009) (citations omitted).

Based on Defendants' motion for sanctions, it appears that Defendants believe they should recover fees incurred in connection with three motions to compel, all filed after the February 2013 opinion was issued. (*See* ECF Nos. 193, 265, 281). The motion to compel filed in July 2013, (ECF No. 193), did not relate to Plaintiffs' failure to comply with the February 2013 order, but concerned the "anticipation of litigation" date. As for the two most recent motions to compel, Defendants agreed to withdraw them in exchange for Plaintiffs' "compromise production." Moreover, it appears that these two motions to

28

compel also concerned the date when Plaintiffs anticipated litigation as opposed to Plaintiffs' violation of the February 11, 2013 order. *See* 8B Charles Alan Wright, et al., *Federal Prac. & Proc.* § 2289 (3$^d$ ed. 2010) (the expense that may be recovered under [Rule 37(b)(2)] are those 'caused by the failure' to obey an order."). Even after Judge Schulze determined (in ruling on Defendants' motion to compel filed in July 2013) that Plaintiffs did not anticipate litigation until December 8, 2008, Defendants took the position that Plaintiffs actually did not anticipate litigation until sometime in January 2009. The merits of this position were never adjudicated considering that the December 2, 2013 motion to compel and the February 10, 2014 amended motion to compel were both withdrawn. *See, e.g., Wake v. Nat'l R.R. Passenger Corp.*, No. PWG-12-1510, 2013 WL 1316431, at *5 (D.Md. Mar. 27, 2013) ("As [it is] not at issue here, Defendant may not recover attorney's fees and expenses for the prior [m]otion to [c]ompel"). Moreover, Defendants did not prevail on their motion for sanctions seeking dismissal or default judgment, thus granting attorneys' fees in connection with that motion would be inappropriate. Based on the foregoing, the motion for sanctions will be denied.

The court will not undertake to determine whether any portion of this Memorandum Opinion will be filed under seal. Accordingly, the Memorandum Opinion will be filed under seal

temporarily, and the parties are directed to review it and suggest *jointly* within fourteen (14) days from this memorandum opinion any necessary redactions that should be made before it is released to the public docket.

## III. Conclusion

For the foregoing reasons, the motion for sanctions filed by Defendants will be denied.  A separate order will follow.


                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge