IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| CHARTER OAK FIRE INSURANCE COMPANY, et al. | : | |
| v. | : | Civil Action No. DKC 09-0100 |
| AMERICAN CAPITAL, LTD., et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this insurance case is an objection (ECF No. 462) filed by Plaintiffs and Counterclaim Defendants The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America (together, "Travelers" or "Plaintiffs") to a discovery ruling issued by United States Magistrate Judge Jillyn K. Schulze on December 10, 2014 (ECF No. 448) denying Plaintiffs' Motion to Compel "At-Issue" Discovery Materials (ECF No. 396), and granting a motion for a protective order (ECF No. 409) filed by Defendants and Counterclaimants American Capital, Ltd., Scientific Protein Laboratories LLC ("SPL"), and Spectator Management Group ("SMG") (collectively, "American Capital" or "Defendants"). Also pending are five motions to seal. (ECF Nos. 463, 468, 471, 477, and 481). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons,

Plaintiffs' objection will be overruled.   The rulings on the respective motions to seal are set forth below.

## I.  Background

On November 27, 2012, this case was referred to Magistrate Judge Schulze for resolution of all discovery disputes and for determination of non-dispositive matters.  (ECF No. 145).  As numerous opinions in this case have come before this one, familiarity with the facts is assumed and only the facts applicable to Plaintiffs' objection will be included.  (*See* ECF Nos. 42, 64, 77, 92, 170, 184, 267, 378, 492).

On February 25, 2014, Defendants moved for leave to file third amended counterclaims seeking to add two counterclaims: (1) statutory tort of lack of good faith by Plaintiffs in denying insurance coverage pursuant to Md.Code Ann., Cts. & Jud. Proc. § 3-1701 and its companion, Md.Ins.Code § 27-1001; and (2) common law tort of promissory fraud.  (ECF Nos. 284 & 285).  By memorandum opinion and order issued on September 2, 2014, Defendants were allowed to file third amended counterclaims.  As to the counterclaim for lack of good faith, the September 2, 2014 memorandum opinion noted, in relevant part:

> This counterclaim relates to alleged misrepresentations by Travelers regarding its internal coverage position when it wrote the January 16, 2009 letter to American Capital denying defense insurance coverage for the heparin lawsuits. . . .  The two statutes invoked by Defendants require an

2

> insurer to make "an informed judgment based
> on honesty and diligence supported by
> evidence the insurer knew or should have
> known at the time the insurer made a
> decision on a claim." C.J. § 3-1701(a)(4).
> The statutes authorize a cause of action
> against an insurer that fails to act in good
> faith in denying coverage, and authorize the
> insured to recover "actual damages," up to
> the limits of the applicable insurance
> policy, along with attorneys' fees,
> expenses, other litigation costs, and
> interest. C.J. § 3-1701(e).

(ECF No. 378, at 15-16).   The opinion noted that the second

proposed counterclaim for promissory fraud was based upon

allegations that "notwithstanding issuing the policies in their

intended form to include 'alter ego' coverage for American

Capital itself and coverage for subsidiary and 'ownership of

majority interest' companies of American Capital, Travelers

intended from the time it sold the policies only to cover 'slip

and fall' claims relating to American Capital's failure to

maintain its office workspace." (*Id.* at 18-19) (*quoting* ECF NO.

285, at 9).   The promissory fraud counterclaim essentially is

premised on the allegation that Travelers included specific

terms in each of the policies (in 2006, 2007, and 2008) in an

effort to obtain American Capital's business, yet Travelers had

no intention to perform the express contractual terms.   The

undersigned noted that "[i]t does not appear that the new

counterclaims will require extensive discovery because they

largely concern *Plaintiffs' state of mind* at the time they

issued the insurance policies and their coverage position to American Capital." (*Id.* at 13) (emphasis added).

On September 4, 2014, Judge Schulze issued a paperless order informing the parties, *inter alia*, that "[a]ny additional discovery regarding recently added counterclaims must be requested by September 18, 2014, and completed by October 31, 2014."[1] (ECF No. 384). The subject of the instant dispute is a letter order issued by Judge Schulze on December 10, 2014, adjudicating discovery motions related to Defendants' third amended counterclaims discussed above. (*See* ECF No. 448, Dec. 10, 2014 order). Specifically, Judge Schulze adjudicated the following motions in the December 10, 2014 letter order: (1) Plaintiffs' motion to compel "at-issue" documents (ECF No. 396); (2) Plaintiffs' motion to compel compliance with Rule 30(b)(6) deposition notice (ECF No. 399); (3) Defendants' motion for a protective order (ECF No. 409); and (4) Plaintiffs' motion for leave to file a surreply to Defendants' motion for a protective order (ECF No. 437). Judge Schulze denied Plaintiffs' motions and granted Defendants' motion for a protective order. (ECF No. 448). The substance of the order will be discussed below.

---

[1] The parties subsequently requested an extension of time to complete discovery, which Judge Schulze granted. (*See* ECF No. 387).

Plaintiffs objected to the December 10, 2014 order on December 26, 2014.[2]   (ECF No. 462).   Defendants filed an opposition, (ECF No. 470), and Plaintiffs replied (ECF No. 476).   The parties also filed five motions to seal.   (ECF Nos. 463, 468, 471, 477, and 481).

## II.   Standard of Review

Under 28 U.S.C. § 636(b)(1), non-dispositive pretrial matters may be referred to a magistrate judge for hearing and determination.   A district judge may modify or set aside any portion of a magistrate judge's non-dispositive ruling "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."   *Id.; see also* Fed.R.Civ.P. 72(a); Local Rule 301.5.a.   "The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."   28 U.S.C. § 636(b)(1)(C). The "clearly erroneous" standard applies to factual findings, while legal conclusions will be rejected if they are "contrary to law."   *MMI Prods v. Long*, 231 F.R.D. 215, 218 (D.Md. 2005).

> Under the clearly erroneous standard, the reviewing court is not to ask whether the finding is the best or only conclusion permissible based on the evidence. Nor is it to substitute its own conclusions for that of the magistrate judge. *See Tri-Star Airlines, Inc. v. Willis Careen Corp.*, 75 F.Supp.2d 835, 839 (W.D.Tenn. 1999).

---

[2] Plaintiffs also moved for reconsideration of the December 10, 2014 order, which Judge Schulze denied. (*See* ECF No. 473).

> Rather, the court is only required to
> determine whether the magistrate judge's
> findings are reasonable and supported by the
> evidence. *Id.* "It is not the function of
> objections to discovery rulings to allow
> wholesale relitigation of issues resolved by
> the magistrate judge." *Buchanan v. Consol.*
> *Stores Corp.*, 206 F.R.D. 123 (D.Md. 2002).

*Int'l Ass'n of Machinsits & Aerospace Workers v. Wener-Matsuda*,
390 F.Supp.2d 479, 486 (D.Md. 2005).

## III. Analysis

### A. Plaintiffs' Objection to Judge Schulze's December 10, 2014 Order

### 1. Motion to Compel

Plaintiffs argue that Judge Schulze's December 10, 2014 was clearly erroneous or contrary to law insofar as it denied their motion to compel. Specifically, in the motion to compel, Plaintiffs argued that by filing third amended counterclaims ("TACC") to include claims for lack of good faith and promissory fraud, Defendants have put "at issue" documents relating to: (1) their communications with Plaintiffs regarding notice and claims communications; (2) Defendants' own views as to the existence of coverage under Plaintiffs' policies; and (3) the connection, if any, between the issue of coverage under Plaintiffs' policies and Defendants' decision to enter the Baxter Cost-Sharing Agreement ("CSA"). (ECF No. 396-1, at 10).

Plaintiffs believe that Judge Schulze misapplied the test for waiver of the attorney-client privilege in *Hearn v. Rhay*, 68

6

F.R.D. 574 (E.D.Wash. 1975), to the documents at issue.  A party is treated as having waived the attorney-client privilege if: "(1) the assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash. 1975).  Plaintiffs suggest that if the court were to follow its own prior rulings on the "at issue" waiver, it would have to find that the two new counterclaims inject the content of privileged material into this litigation.  This argument is misplaced.  As Defendants argued in their opposition to the motion to compel, "Travelers' original complaint, by seeking rescission, *necessarily pleaded* that Travelers was ignorant, before it filed suit, of the fact that American Capital was not a subsidiary-free company." (ECF No. 408, at 42) (emphasis added).  Promptness is an essential element of the rescission claim.  (ECF No. 64, at 35-38).  In the February 11, 2013 memorandum opinion, the undersigned explained that in cases finding an implied waiver because a party has placed the extent and timing of its knowledge at issue, courts have been careful to order produced only the facts contained within privileged or protected communication that

*directly bear* on what the party knew and when they knew it. (ECF No. 170, at 24).   I stated: "Here, what is relevant to the issue of promptness is limited to the timing of Plaintiffs' investigation into, and conclusions about, the facts that American Capital allegedly misrepresented in its insurance applications." (*Id.* at 25).

Here, however, any purported bad faith and strategizing by Defendants to stall receiving a coverage position from Plaintiffs is not central and would *not* rebut the claim of lack of good faith against Plaintiffs.   Plaintiffs argued in their motion to compel:

> Until they filed their affirmative claim via the Third Amended Counterclaims, [Defendants] had not been required to produce internal communications evidencing their reactions and response to the Insurers' information request, and whether they in fact implemented a strategy of delay and obfuscation.   The timeline of events, laid out above, strongly suggests that this is the case. . . .   [D]uring the summer and fall of 2008, [Defendants] were pursuing their own interests through the Baxter negotiations, while simultaneously stalling [Plaintiffs'] attempted claims-handling investigation by refusing, *inter alia*, attempts to meet and requests for information regarding the heparin claims. [Defendants'] *reason* for doing so, as will be uncovered through discovery of the heretofore withheld communications, was to finalize the Baxter agreement before the Insurers provided a coverage determination. Contrary to [Defendants'] present self-serving allegations that the Insurers delayed in providing a coverage opinion, the

> Insurers believe this *discovery will provide*
> *further evidence that [Defendants]*
> *themselves deliberately intended to create*
> *the delay, to their own advantage in the*
> *Baxter negotiations.*
>
> If [Defendants] truly did implement
> such a strategy, this is without question
> relevant to the Court's determination of
> whether the [Plaintiffs] conducted a
> "diligent investigation" under the "totality
> of the circumstances" during the claims-
> handling process, which is a key element of
> [Defendants'] lack of good faith claim.
> Moreover, the information is essential to
> [Plaintiffs'] ability to rebut the serious
> charges made by [Defendants] in the Third
> Amended Counterclaims . . . including that
> [Plaintiffs] masterminded a conspiracy to
> deprive them of coverage.

(ECF No. 396-1, at 26-27) (emphasis added).

Md.Code Ann., Cts. & Jud. Proc. § 3-1701(a)(4) defines good faith as "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim."  The court in *Cecilia Schwaber Trust Two v. Hartford Accident and Indem., Co.*, 636 F.Supp.2d 481, 487 (D.Md. 2009) determined that assessing whether an insurer acted in good faith requires "an evaluation of the insurer's efforts to obtain information related to the loss, accurately and honestly assess this information, and support its conclusion regarding coverage with evidence obtained or reasonably available."  Judge Grimm further explained in

*Lanham Services, Inc. v. Nationwide Property and Cas. Ins. Co.*,
No. PWG-13-3294, 2014 WL 2772227, at *5 (June 18, 2014):

> This evaluation only insulates an
> insurer who acted with reasonable diligence
> when making a reasonable decision based on
> the information that was available to it
> when rendering said decision. *See id.; see
> also All Class Constr., LLC v. Mut. Benefit
> Ins. Co.*, No. JKB-13-2258, 2014 WL 768672,
> at *7 (D.Md. Feb. 26, 2014) (following the
> reasoning of *Cecilia Schwaber*). *For
> example, if an insurer denies a claim
> because it believed the insured was at
> fault, it will not be held to have lacked
> good faith if the evidence that the insurer
> had at the time reasonably supported its
> decision, even if other information later
> came to light. See Cecilia Schwaber*, 636
> F.Supp.2d at 487. However, it does not
> necessarily preclude finding a lack of good
> faith whether an insurer unreasonably delays
> a decision when there is no valid reason to
> do so *based on the evidence known at the
> time.*

(emphases added).

Plaintiffs contend that they "are entitled to all evidence
they believe will establish once and for all that they made a
diligent and timely effort to determine whether coverage was
owing, and yet were prohibited from doing so by [Defendants']
intentional efforts to delay or prevent any such decision being
made until after they had secured the Baxter CSA." (ECF NO.
396-1, at 29). *Defendants'* intentions as to the existence of
coverage, however, is irrelevant to the good faith counterclaim.
As explained in *Lanham Services Inc.*, what matters is

Plaintiffs' intent *at the time* they denied coverage.  In other words, the fact that Plaintiffs may uncover *now* from the privileged communications that Defendants were purposefully stalling in obtaining a coverage position from Travelers or had some impermissible motive for concealing their dealings with Baxter and SPL and for tendering claims for record purposes only has nothing to do with whether *Plaintiffs* unreasonably delayed a decision based on what *Plaintiffs knew at the time*.  Even if Plaintiffs now discover why Defendants purportedly did not respond to Plaintiffs' numerous requests for information and meetings, and "why they acted in that way and whether [Defendants] themselves were proceeding in good faith," that would not in any way impact the legal analysis of whether *Plaintiffs* acted with reasonable diligence when making a coverage decision based on the information that was available to them when they rendered such decision.  (ECF No. 396-1, at 30); *see, e.g, All Class Const., LLC*, 3 F.Supp.3d 409, 416 (D.Md. 2014) ("[T]he determination as to good faith focuses on the time at which the insurer's decision was made, not at a later point in subsequent litigation when all involved have the benefit of additional evidence.").  As Defendants argued in their opposition to the motion to compel, "[u]nder the statute, an insurer can only be held accountable for what it had notice of

(or reasonably should have had notice of) at the time it made
its bad-faith decision." (ECF No. 408, at 39).

Indeed, this rationale essentially formed the basis for
Judge Schulze's decision to deny Plaintiffs' motion to compel.
She explained in her December 10, 2014 order that Plaintiffs
already know what Defendants did and when they did it. (ECF No.
448, at 2). Specifically, Judge Schulze stated:

> Here, [Plaintiffs] do not seek the
> facts relating to Defendants' conduct during
> their pre-suit dealings with Baxter or
> [Plaintiffs]. More specifically, they make
> no claim that they do not already know that
> Defendants (1) initially provided record
> notice only, (2) initially declined to meet
> with [Plaintiffs] to discuss the claims, and
> (3) delayed asking for a coverage position,
> proposed a tender date agreement, and
> negotiated and finalized the CSA. *In short,*
> *they already know what Defendants did, and*
> *when they did it. What they seek to*
> *discover now is "why" Defendants took these*
> *actions and "why" Defendants timed them as*
> *they did.* []

> Assuming, without deciding, that the
> actions Defendants took are relevant to
> defending the newly added counterclaims, the
> Defendants' reasoning or motivation –
> the "why" for those actions – is not
> discoverable. A promissory fraud claimant
> must show that it reasonably acted in
> reliance on the misrepresentation and would
> not have done so had the misrepresentation
> not been made. *Call Carl, Inc. v. BP Oil*
> *Corp.*, 554 F.2d 623, 629 (4th Cir. 1977).
> Maryland courts describe the reasonable
> reliance element as a "right to rely" on the
> misrepresentation. *James v. Goldberg*, 256
> Md. 520, 528-29 (1970). Reasonable reliance
> is, of course, an objective standard as to

which subjective intent is irrelevant. *Sass v. Andrew*, 152 Md.App. 406, 441 (2003) ("In determining if reliance is reasonable, a court is required to 'view the act in its setting, which will include the implications and promptings of usage and fair dealing.'") (*quoting Giant Food v. Ice King*, 74 Md.App. 183, 192 (1988)). The lack of good faith counterclaim places at issue only [Plaintiffs'] state of mind at the time they issued their coverage position. . . . *While communications known to the insurer may well be relevant to assessing a claim of lack of good faith, those not known to the insurer are not relevant to either an allegation or a defense of such a claim.* Thus, as to either the promissory fraud claim or the lack of good faith claim, the question "why" Defendants acted in a certain way is not discoverable.

(ECF NO. 448, at 2) (emphases added). Plaintiffs' desire to rebut the allegations in the third amended counterclaims does not mean that the information they seek is *relevant* to the counterclaims or their defenses. Accordingly, Plaintiffs have not established that Judge Schulze's decision on this basis constituted clear error or was contrary to law.

Next, Plaintiffs argue that Judge Schulze erred insofar as she denied production of documents related to the Baxter CSA executed in December 2008, before Plaintiffs denied coverage on January 16, 2009. In the *second* amended counterclaims, Defendants asserted that prior to Plaintiffs having disclaimed coverage in January 2009, they were "provided a copy of a certain agreement between SPL and Baxter executed in December

2008, in which those parties, along with American Capital, agreed to engage common counsel to jointly defend the underlying heparin suits in order to mitigate (or 'share') the aggregate cost of defending those suits. . . . By doing so, SPL also reduced its potential indemnity obligation to Baxter under the Supply Agreement." (ECF No. 106 ¶ 192). In the third amended counterclaims, Defendants assert that Travelers forced them to secure a defense funding commitment from a collateral source (*e.g.,* Baxter via the CSA) by "delaying release of the coverage position beyond the time prescribed by regulation and its own internal guidelines." (ECF No. 380 ¶ 169). Plaintiffs now argue that "[b]ecause [Defendants] affirmatively *contend* that the reason they entered into the Baxter Agreement was because [Plaintiffs] delayed in making or disclosing a coverage position, leaving them with no alternative but to agree to the Baxter deal, they beyond question have put the reasons behind their actions – 'why' they did what they did – at issue." (ECF No. 462, at 12). Specifically, Plaintiffs argued in their motion to compel:

> the claim that [Plaintiffs'] actions caused [Defendants] to enter the Baxter CSA indisputably opens the door to discovery of [Defendants'] internal communications, motivations and actions, which are directly at issue and necessary to [Plaintiffs'] efforts to prove that the decision to enter the Baxter CSA was driven, not by [Plaintiffs'] actions, but by American

14

> Capital's desire to cap or quantify SPL's
> heparin exposure to maintain the company's
> marketability.

(ECF No. 396-1, at 29). Accordingly, Plaintiffs believe that they "need all discovery, privileged or not, regarding why [Defendants] actually entered the Baxter CSA and what role, if any, the status of discussions with [Plaintiffs] had in that decision. Without the discovery at issue, [Plaintiffs] cannot respond fully to [Defendants'] self-serving claims of causation." (ECF No. 396-1, at 30) (emphasis in original). Plaintiffs believe that Defendants actually "preferred a settlement agreement with Baxter to an insurance commitment from the Insurers because the Baxter Agreement better served American Capital's business needs." (ECF No. 462, at 15).

Plaintiffs' arguments are unavailing. With respect to Plaintiffs' request for documents related to the Baxter CSA, Judge Schulze reasoned:

> [Plaintiffs] attempt a somewhat more
> specific argument by claiming that they need
> to discover Defendants' strategy in order to
> rebut the allegations that [Plaintiffs']
> actions "forced" Defendants to enter into
> the CSA. But this "need" is nothing more
> than the flip side of Defendants' "need" to
> prove that [Plaintiffs'] actions forced them
> to enter the CSA. Just as Defendants were
> not entitled to discover "why" [Plaintiffs]
> acted as they did with regard to the
> rescission claim, or "why," as Defendants
> allege, [Plaintiffs] initially concealed
> their coverage determination, . . .
> [Plaintiffs] are not entitled to discover

15

"why" Defendants acted as they did. *Again,
[Plaintiffs] point to no fact that they do
not already know.* For-profit companies may
be presumed to act in pursuit of their best
financial interest, *and allegations of
improper motivation must be proven or
rebutted without access to the advice or
mental impressions of their lawyers. Thus,
here, counsels' opinions, advice, and legal
analysis regarding the existence, extent and
amount of coverage, and the tactical
considerations relevant to dealing with
those issues, are not discoverable.*

(ECF No. 448, at 3) (emphases added). Judge Schulze further

noted:

In addition, as discussed in the Motion for
Protective Order, ECF No. 410 at 7-12,
discovery regarding the CSA predated by many
months the conclusion of general discovery
in this case. The Insurers have long known
that Defendants claim to have entered the
CSA to mitigate their damages. . . .
Defendants' employees were deposed on the
subject, and Travelers argued during the
December 21, 2012[] hearing that Defendants'
assertion that they were forced to enter
this agreement placed their state of mind at
issue. [] The Insurers did not obtain this
material then and did not seek it again
prior to close of discovery.

(ECF No. 448, at 3 n.3).

The allegations in the third amended counterclaims

regarding the Baxter CSA pertain to damages. Defendants have

the burden of proof to establish damages on their counterclaims

and it is wholly unclear why privileged[3] communications between

---

[3] Although Plaintiffs now question whether the documents
Defendants have designated as "privileged" actually are

16

Defendants and their attorneys are relevant or necessary for Plaintiffs to rebut the assertion that Defendants were forced to enter into the Baxter CSA as a result of Plaintiffs' claims handling conduct.  As Judge Schulze observed, Plaintiffs deposed Defendants' employees regarding the Baxter CSA, and a decision to enter into an agreement ultimately rests with the company, not their lawyers.  Thus, Plaintiffs have not established that the privileged information is *vital* to their defense under *Hearn*.  The analysis in *Smith v. Scottsdale Ins. Co.*, 40 F.Supp.3d 704, 724-25 (N.D.W.Va. 2014), also is instructive:

> Plaintiffs also contend that the privilege is waived as to certain categories of documents because they concern issues central to their case.  For example, Plaintiffs assert that because they allege that the underlying defendants and Defendant used race in making settlement decisions, all documents mentioning race are discoverable.  Additionally Plaintiffs argue that all attorney-client privileged documents wherein the parties characterized the underlying case and formulated case strategy are discoverable "because of the centrality of how the underlying defendants, Scottsdale, and insurance counsel characterized the case . . . or strategized."  Plaintiffs['] arguments are essentially that the information they seek is highly relevant to their claims. However, the Court cannot pierce the

privileged, they did not make this argument in their motion to compel.  As Judge Schulze noted in the December 10, 2014 order "[t]he Insurers do not concede that the documents are protected but acknowledge, and do not here challenge, the court's prior ruling that they are."  (ECF No. 448, at 1 n. 1 (*citing* ECF No. 396-1, at 7 n.2)).

attorney-client privilege simply because the information may be relevant to a party's claims. *See Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 415-16 (D.Del. 1992) ("The Court cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant. . . . It is always possible that the client's motive or conduct was influenced by something his attorney told him, but compelling the production cannot be justified solely as a means to check the insured's statements."); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3$^d$ Cir. 1994) ("Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue."). *The documents are certainly relevant to the issues Plaintiffs have injected into the case by virtue of its own allegations, however, the only issue here is whether Defendant affirmatively placed the privileged communications at-issue in this case, and the Court finds that it did not.* Accordingly, the Court finds that to the extent it applies to documents withheld from the claim file, the attorney-client privilege has not been impliedly waived by Defendant.

As for work product, Plaintiffs assert that the implied "at-issue" exception to the immunity of opinion work-product applies in this case because the opinions of counsel and Defendant's adjusters are directly at issue. As noted above, in this Circuit, opinion work product enjoys almost absolute immunity from discovery, and an indirect waiver of i[t]s protection will only be found in extreme circumstances. *In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir.

> 1988) ("While certainly actual disclosure of
> pure mental impressions may be deemed
> waived, and while conceivably there may be
> indirect waiver in extreme circumstances, we
> think generally such opinion work product is
> not subject to discovery.").

(emphasis added). For the reasons explained above and based on a review of the record, Judge Schulze's denial of Plaintiffs' motion to compel was neither clearly erroneous nor contrary to law.

### 2.   Motion for a Protective Order

Plaintiffs also object to the December 10, 2014 order insofar as Judge Schulze granted Defendants' motion for a protective order.    In their initial objections, Plaintiffs argued that the protective order entered by Judge Schulze was overly broadly as it applied to written interrogatories and Rule 30(b)(6) deposition topics that cover topics *other* *than* the withheld communications at issue in Plaintiffs' motion to compel.   (ECF No. 462, at 17-20).    In their reply brief, however, Plaintiffs indicate that they withdraw their objection to the scope of the December 10, 2014 order regarding Defendants' purported failure to answer certain interrogatories.[4] (ECF No. 476, at 4).

---

[4] Plaintiffs also argue that "the [December 10, 2014] Order [erroneously] prohibits the depositions noticed by the Insurers based upon the finding on the Insurers' Motion to Compel that no privilege waiver resulted from the assertion of the claims stated in the TACC." (ECF No. 462, at 16).    Plaintiffs'

Plaintiffs also argue that no protective order should have issued with respect to the "SPL sale documents." (ECF No. 462, at 20). As to the SPL sale documents, Judge Schulze granted the protective order on the following basis:

> The request for documents concerning the April 2014 sale of SPL is opposed [by Defendants] on the basis that all events alleged in the TACC happened not later than January 16, 2009, so that the sale of SPL five years later cannot be relevant. ECF No. 410 at 18. This allegation is not disputed in [Plaintiffs'] opposition, and therefore is sustained.

(ECF No. 448, at 5). Judge Schulze also noted that Plaintiffs moved for leave to file a surreply "in which they address [the SPL] issue. ECF No. 437. However, the court has not relied on any matter presented in the reply memorandum, and thus there is no basis upon which to grant leave to file a surreply." (ECF No. 448, at 5 n.4). Plaintiffs object to this ruling on the following basis:

> This aspect of the Magistrate Judge's Order was not based on any consideration of the relevance of these documents, but instead on the fact that [Plaintiffs'] opposition to [Defendants'] motion for a protective order inadvertently failed to address this issue. That failure was neither intentional nor strategic; indeed, the Magistrate Judge noted [Plaintiffs']

objection will be overruled as to Judge Schulze's denial of the motion to compel, thus Plaintiffs' deposition notices based on their arguments in support of the motion to compel were correctly stricken.

20

attempt to correct the error through a sur-
reply.

.  .  . [Plaintiffs] recognize that the
record provided the Magistrate Judge with
the justification to declare a "forfeit" in
favor of [Defendants].  We nonetheless ask
the Court to look past this "gotcha"
reasoning and consider the relevance of the
SPL sale documents. .  .  .  Therefore,
[Plaintiffs] request that the Court modify
the Protective Order so that the SPL sale
documents must be produced.

(*Id.* at 21).

Plaintiffs have not demonstrated that this ruling was
clearly erroneous or contrary to law.  In their motion for a
protective order, Defendants argued:

Travelers' fourth request seeks all
documents concerning the April 2014 sale of
SPL by majority shareholder American Capital
and SPL's other shareholders to Shenzhen
Hepalink Pharmaceutical Co., Ltd.  The
"newly added counterclaims" as to which
discovery was permitted concern fraud
allegedly committed by Travelers in June
2006, June 2007, and June 2008 (when it
issued each of the sets of policies with no
intent to perform) and a lack of good faith
exhibited by Travelers on and before January
16, 2009, when it denied coverage for the
heparin claims on specious grounds.  *The
counterclaims make no reference to the sale
of SPL to Hepalink more than five years
later in April 2014.*

(ECF No. 410, at 16) (emphasis added).  It is uncontested that
Plaintiffs did not address this argument in their opposition to
the motion for a protective order.  Plaintiffs now attempt to
fault Judge Schulze for not accepting their surreply in which

they belatedly sought to address the argument raised by
Defendants regarding the 2014 sale of SPL.   First, a surreply
may not be filed unless otherwise ordered by the court.   Local
Rule 105.2(a).   Although a district court has discretion to
allow a surreply, surreplies are generally disfavored.   *Chubb &
Son v. C.C. Complete Servs., LLC*, 919 F.Supp.2d 666, 679 (D.Md.
2013).   A surreply may be permitted "when the moving party would
be unable to contest matters presented to the court for the
first time in the opposing party's reply."   *Khoury v. Meserve*,
268 F.Supp.2d 600, 605 (D.Md. 2003).   There is no question here
that Plaintiffs did *not* move for leave to file a surreply to
respond to new arguments made by Defendants in their reply.
Thus, Judge Schulze's decision to deny the motion for leave to
file a surreply fell within her discretion and was not contrary
to law.   Moreover, generally failure to respond to an argument
made in a motion constitutes waiver.   *See, e.g., Ferdinand-
Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D.Md.
2010) ("By her failure to respond to [defendant's] argument" in
a motion to dismiss, "the plaintiff abandons [her] claim.");
*Mentch v. Eastern Sav. Bank, FSB*, 949 F.Supp. 1236, 1247 (D.Md.
1997) (holding that failure to address defendant's arguments for
summary judgment in the opposition brief constituted abandonment
of claim).   As Defendants argue, "[n]either Defendants nor the
Court orchestrated a 'gotcha.'   Defendants made an argument in

22

support of a motion and Travelers, despite then being
represented by three national law firms, did not oppose the
argument." (ECF No. 470, at 6). In any event, it is not at all
clear why documents pertaining to the sale of SPL in 2014 in any
way relate to the lack of good faith and promissory fraud
counterclaims premised on events from 2006 through January 2009.
Accordingly, Plaintiffs' objection will be overruled on this
basis too.

### B. Motions to Seal

The applicable law pertaining to sealing has been explained
in many prior opinions and need not be repeated. The parties
have filed five motions to seal in connection with Plaintiffs'
objection to the December 10, 2014 order. (ECF Nos. 463, 468,
471, 477, 488). Notably, the undersigned issued an order on
March 20, 2015 instructing the parties that "[g]oing forward,
[they] must review carefully the docket in this case and *all*
pending motions to seal, and determine whether the pending
motions are merely boilerplate and need to be supplemented. If
so, the parties promptly must supplement, as necessary." (ECF
No. 503, at 4-5). As Judge Schulze noted in her memorandum
opinion dated May 7, 2015, no supplements were filed.

### 1.   Plaintiffs' Motion to Seal Portions of their Objection to the December 10, 2014 Order (ECF No. 463)

Plaintiffs submitted a boilerplate motion to seal their memorandum in support of the objection to the December 10, 2014 order and the five accompanying exhibits.  They "ask the Court to seal materials referenced in or documents appended to the Objection brief which Defendants themselves have labeled (or may seek to label) as confidential, pursuant to the Stipulated Protective Order." (ECF No. 463 ¶ 5).  Plaintiffs later clarify that they only seek to redact certain statements because they believe Defendants have labeled them as confidential. (*See* ECF No. 475, at 1-2).  Plaintiffs have filed a redacted version of the memorandum in support of their objection but have not provided any specific reasons to explain why they redacted the materials they redacted.  Defendants' response to Plaintiffs' motion to seal is more helpful.  Defendants indicate that they join Plaintiffs' motion to seal only insofar as it redacts statements that: (1) reference or describe statements made under FRE 408; and (2) relate to SPL's Cost Sharing Agreement with Baxter (and the corresponding Change of Control Agreement). (*See* ECF No. 466, at 1 & ECF No. 393).  Defendants have filed (under seal) an exhibit that brackets the material that they believe should remain under seal because it falls within one of

the above two categories.[5]   (*See* ECF No. 467).   Defendants explain that statements related to settlement discussions should remain under seal at least at this stage.   (ECF No. 393, at 4). As for the Baxter CSA, Defendants indicate that "[m]ultiple heparin litigations are ongoing, and no underlying plaintiff should be entitled to design or re-design its litigation strategy based on the disclosure that a 'deeper pocket than SPL' (Baxter) may be advancing the cash flow necessary to pay settlements and judgments."   (*Id.* at 5).   Plaintiffs do not object to the narrower set of redactions proposed by Defendants. (*See* ECF No. 475, at 2).

Defendants' proposed redactions to Plaintiffs' memorandum in support of their objection to the December 10, 2014 order will be accepted.   Defendants must file promptly on the public docket the redacted version they proposed in ECF No. 467. Neither party has provided any justification for keeping from

---

[5]   Defendants' motion to seal ECF No. 472 (which includes their proposed redactions in brackets to Plaintiffs' memorandum in support of their objection) will be granted.   However, quite obviously, the redacted version should actually redact the material the parties want concealed, rather than bracket it.   As explained in the May 17, 2015 memorandum opinion, in the future the parties should submit a sealed fully unredacted version of a document *along with* a redacted version filed on the public docket.   (*See* ECF No. 492, at 8).   Accordingly, Defendants now will have to file a truly redacted (as opposed to bracketed) version of ECF No. 467 so that it will be made available to the public.

the public record exhibits contained at ECF No. 462-1 through 462-5.  Accordingly, these exhibits will be unsealed.

### 2.   Defendants' Motion to Seal Filings in Connection with their Response to Plaintiffs' Objection (ECF No. 471)

Defendants supply a redacted version of their opposition memorandum and Exhibit 2 thereto, seeking to seal statements made under FRE 408 and disclosures relating to the Baxter CSA. (ECF No. 471, at 2).  In their response to this motion to seal, Plaintiffs offer slightly broader redactions which they believe are necessary to protect the two categories of statements discussed above *along with* Plaintiffs' internal business policies, procedures, and claims deliberations, disclosure of which they believe could be harmful to them. (*See* ECF No. 474, at 3).  Plaintiffs' proposed redactions are minimal and will be accepted.  The clerk will be directed to unseal ECF No. 474-1, which is the redacted version of Defendants' opposition memorandum and Exhibit 2.

### 3.   Plaintiffs' Motion to Seal Portion of their Reply Brief in Support of their Objection (ECF No. 477)

Plaintiffs indicate in this motion to seal that they have redacted portions of their reply memorandum on the basis that "Defendants may allege [statements made therein] are subject to confidential treatment, [and] in order to afford the Defendants an opportunity respond." (ECF No. 477 ¶ 6).  Plaintiffs also seek to redact Exhibit 1 to the reply memorandum, which consists

26

of Defendants' answers to interrogatories and was addressed before (the redacted version filed at ECF No. 474-1 will be unsealed). Defendants have submitted a redacted version of Plaintiffs' reply brief, leaving unsealed most of the document and redacting only the information falling into the two categories discussed above. (*See* ECF No. 480). Defendants' redactions will be accepted, but they must file promptly on the public docket a truly redacted version of ECF No. 480[6] because they again bracketed the information they seek to be redacted as opposed redacting it.

### 4.   Memorandum Opinion

As before, the undersigned will not endeavor to determine what portions (if any) of this Memorandum Opinion contain information that is under seal. Rather, the Memorandum Opinion will be filed under seal temporarily, and the parties are directed to review it and within fourteen (14) days suggest *jointly* any necessary redactions that should be made before it is released to the public docket.

---

[6] Defendants' motion to seal ECF No. 480 (which is the redacted version of Plaintiffs' reply memorandum with brackets around the information Defendants believe should be redacted) will be granted, but as indicated Defendants should submit true redactions in the future and not bracket the redacted information.

## IV.  Conclusion

For the foregoing reasons, Plaintiffs' objection will be overruled.  The motions to seal will be granted, but Defendants must submit redacted versions of certain filings in accordance with the directives above.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
